No. 59,803

W. S. Dickey Clay Manufacturing Company, *Appellant,* v. The State Corporation Commission of the State of Kansas and The Gas Service Company, *Appellees.*

(740 P.2d 585)

Opinion filed July 17, 1987.

*Stuart W. Conrad,* of Lathrop, Koontz & Norquist, of Kansas City, Missouri, argued the cause, and *Gregory J. Bien,* of Sloan, Listrom, Eisenbarth, Sloan and Glassman, of Topeka, was with him on the brief for appellant.

*Robert L. Bezek, Jr.,* assistant general counsel, argued the cause, and *Brian J. Moline,* general counsel, and *John Jay Rosacker,* assistant general counsel, Kansas Corporation Commission, were with him on the brief for appellee.

The opinion of the court was delivered by

Prager, C.J.: This is an action brought by W. S. Dickey Clay Manufacturing Company (Dickey Clay) to review an order of the Kansas Corporation Commission (KCC) relating to a franchise agreement between the Gas Service Company and the City of Pittsburg, Kansas. The Crawford County District Court granted the motion of the KCC to dismiss the case for lack of jurisdiction. Dickey Clay appealed.

Two basic issues are raised on the appeal:

(1) Whether the district court erred in dismissing Dickey Clay's action for judicial review because of Dickey Clay's failure to file a timely appeal;

(2) whether the district court erred in concluding that Dickey Clay did not have an independent action for judicial review pursuant to K.S.A. 77-601 *et seq.*

The facts in this case are not disputed and were found by the district court to be as follows:

"FINDINGS OF FACT

"1. W. S. Dickey Clay Manufacturing Co. (Dickey) is a corporation duly organized and existing under the laws of the State of Delaware, is duly authorized to do business in the State of Kansas as a foreign corporation and operates a clay products manufacturing and processing plant in Pittsburg, Kansas at W. S. Dickey Clay Manufacturing, P. O. Box 6, Pittsburg, Kansas, 66762. Dickey is a significant consumer of natural gas in the State of Kansas and has purchased substantial amounts of natural gas for several years as an industrial customer of KPL/Gas Service Co. (Gas Service) in the State of Kansas.

"2. The defendant Kansas Corporation Commission (KCC) is an administrative branch of the Kansas state government with its principal place of business at the State Office Building, Topeka, Kansas. Gas Service is a public utility with its principal place of business at 200 S.W. 6th, Topeka, Kansas.

"3. The KCC undertook to review the practices of electric, gas and telephone utilities concerning municipal franchise agreements on July 24, 1982. After the cities of Topeka, Kansas City and Salina intervened to challenge the KCC's authority, the KCC on October 21, 1982, determined that it had adequate authority to conduct the investigation; hearings were held on March 16, 1983.

"4. On July 20, 1983, the KCC issued an order which required that:

"(1) All utilities shall file with the commission all new franchise agreements and all renegotiated franchise agreements for the review of the commission. Such filings shall be made at least 60 days in advance of the effective date of the franchise agreement.

"(2) Most favored nations clauses are found to be contrary to the public interest and utilities shall not be permitted in the future to pass through increases resulting from such clauses in franchise agreements.

"5. Meanwhile, on July 10, 1984, the Pittsburg City Council passed Ordinance No. S-651, granting a franchise to Gas Service in which it was provided that the Grantee (Gas Service) shall:

". . . pay into the City Treasury a sum equal to five (5%) percent of said gross receipts from the sale of gas for domestic purposes, and one (1%) percent of its gross receipts from the sale of gas for industrial purposes, which shall have accrued subsequent to the effective date of this franchise.

The ordinance was duly published thereafter and is now an approved ordinance. The length of the franchise agreement is twenty years.

"6. On September 24, 1984, the KCC set for hearing on November 1, 1984, the

matter of the filing of a franchise ordinance between Gas Service and the City of Pittsburg (Pittsburg). This matter had arisen because the franchise agreement between Gas Service and Pittsburg had terminated, and in accord with the new KCC order of July 20, 1983, the new franchise agreement which had been approved by the Pittsburg City Council on July 10, 1984, had to have KCC review before implementation. Dickey Clay was not a party, intervenor or protestant to this proceeding, although notice was given according to statute.

"7. The KCC undertook to review the franchise tax agreement. An employee of Dickey Clay attended the public hearing on November 4, 1984, but did not formally enter an appearance, present any testimony, or otherwise participate.

"8. On January 11, 1985, the KCC issued the first of two orders relating to the negotiations of the franchise agreement between Gas Service and Pittsburg. In this order KCC found that the five percent tax charged by Gas Service on receipts paid by residential users and the one percent tax paid by industrial users was a disparity that could be considered discriminatory. Accordingly, the KCC gave Gas Service the option of preparing a new franchise agreement or establishing the existing levels were reasonable and nondiscriminatory which they alleged had not been done to date.

"9. On January 24, 1985, Pittsburg filed a Motion to Dismiss and a Motion for Rehearing. Gas Service also filed a motion for rehearing. Dickey Clay did not file any motions. Dickey Clay was not a party, intervenor or protestant at this point in time.

"10. On March 4, 1985, the KCC issued an order denying both applications for rehearing and the motion to dismiss and upholding its prior determination that the five percent residential/one percent industrial split was too great a disparity in rate case to be considered reasonable. The KCC further ordered Gas Service to 'revise its tariffs to comply with this finding.' Gas Service provided a recommended tariff, termed equivalent franchise tax, on May 2, 1985.

"11. On May 20, 1985, Dickey filed a request for hearing, a protest of rate filing, and a petition to intervene in the City of Pittsburg case with the KCC.

"12. The KCC met on May 21, 1985, in conference session, and approved the new tariff proposed by Gas Service. The tariff was then forwarded to Gas Service for implementation of the collection of the franchise tax based on this newly approved tariff. The Gas Service Company has inserted the approved, lawful tariff rates into their collection programs. Gas Service will begin collecting the lawful rates in the July billing period.

"13. On June 10, 1985, the request for hearing, petition to intervene and protest of rate filing of Dickey Clay were denied by operation of law.

"14. The KCC, at an administrative meeting on June 11, 1985, denied the request for stay, suspension or rescission of tariff approval order of May 21, 1985, application for rehearing, and petition to intervene which had been filed on May 31, 1985."

It is also undisputed that Dickey Clay filed a petition for judicial review in the district court of Crawford County on June 20, 1985. On June 30, 1986, the district court granted the motion

of the KCC to dismiss Dickey Clay's action for want of jurisdiction.

The first issue raised on the appeal is whether the district court erred in dismissing Dickey Clay's action for review based on Dickey Clay's failure to seek a timely review of the KCC order. The jurisdictional procedures to be followed in order to perfect an appeal from a KCC order are set forth in K.S.A. 66-118a through K.S.A. 66-118c.

K.S.A. 66-118a defines the term "party" and provides:

"**66-118a. Review proceedings; designation of court to conduct review.** The term 'party' as used in this act, and any amendments thereto, shall include any person, firm, corporation, association, municipality, taxpayer, municipal organization, mercantile, agricultural or manufacturing organization or system, public utility or common carrier interested in any matter pending before the state corporation commission or in proceedings for review of an order or decision of the commission. As used in this act, 'public utility' means a public utility as defined by K.S.A. 66-104 and amendments thereto. The court of appeals shall have exclusive jurisdiction of proceedings for review of an order or decision of the state corporation commission arising from a *rate hearing* requested by a public utility or requested by the state corporation commission when a public utility is a necessary party. *Proceedings for review of other orders or decisions of the state corporation commission shall be to a district court having venue, as provided in K.S.A. 66-118c.* Any proceeding for review of an order or decision of the corporation commission which is pending at the time this act takes effect shall not be affected by the provisions of this act. In proceedings for review of an order or decision of the commission, the state corporation commission shall be a party to the proceedings and shall have all rights and privileges granted by this act to any other party to such proceedings." (Emphasis supplied.)

K.S.A. 66-118b sets forth the jurisdictional requirement that a party dissatisfied with an order or decision of the KCC must file a motion for rehearing, stating:

"**66-118b. Same; rehearing; application; time within which filed and rehearing held.** *Any party being dissatisfied with any order or decision of the state corporation commission may apply, within ten (10) days from the date of the service of such order or decision, for a rehearing in respect to any matter determined therein;* within ten (10) days of the date of filing of an application for rehearing, said application shall be granted or denied or continued, but any such continuance shall not exceed thirty (30) days from the date of said order of continuance. If the rehearing is not granted or continued within such ten-day period it shall be taken as denied, and if the rehearing is continued, for purposes of oral argument or otherwise, and the rehearing is not granted within said thirty-day period, it shall be taken as denied. If a rehearing be granted the matter

shall be determined by the commission within thirty (30) days after the conclusion of the rehearing.

"*No cause of action arising out of any order or decision of the commission shall accrue in any court to any party unless such party shall make application for a rehearing as herein provided. Such application shall set forth specifically the ground or grounds on which the applicant considers such order or decision to be unlawful or unreasonable. No party shall, in any court, urge or rely upon any ground not set forth in said application. An order made after a rehearing, abrogating, changing or modifying the original order or decision, shall have the same force and effect as an original order or decision, including the obligation to file an application for rehearing, as provided in this section, as a condition precedent to an appeal therefrom.*" (Emphasis supplied.)

K.S.A. 66-118c specifies the time and procedure for seeking judicial review of a KCC decision or order and provides:

"**66-118c. Same; venue; time; procedure.** *Within 30 days after the application for a rehearing is denied or, if the application is granted, within 30 days after rendition of the order or decision on rehearing, the applicant may apply for court review of the order or decision.* Venue for proceedings for review by a district court shall be in any district court of a county in which the order or decision of the commission is to become effective. The application for review shall be filed in the office of the clerk of the court in which the review is sought, shall specifically state the grounds for review upon which the applicant relies and shall designate the order or decision sought to be reviewed. The clerk of the court shall immediately serve a certified copy of the application upon the state corporation commission by transmitting it, either by hand or by restricted mail, to the secretary of the state corporation commission at the secretary's office in Topeka. The secretary shall immediately notify all parties who appeared in the proceedings before the commission, by restricted mail, that the application for review has been filed." (Emphasis supplied.)

The trial court held that, assuming Dickey Clay was an interested party for purposes of K.S.A. 66-118b, Dickey Clay did not follow the proper procedures to establish jurisdiction in an appeal to the courts. It was undisputed that Dickey Clay never filed a motion for rehearing within ten days of the original order of the KCC entered on January 11, 1985, or the order approving the new tariff on May 21, 1985. K.S.A. 66-118b specifically provides that no cause of action arising out of an order or decision of the commission shall accrue in any court to any party unless such party shall make application for rehearing as therein provided. Furthermore, K.S.A. 66-118c provides that, within 30 days after the application for rehearing is denied, the applicant may apply for court review of the order or decision. In this case, the motions for rehearing of Gas Service Company and the City

of Pittsburg, Kansas, were denied March 4, 1985. Assuming that Dickey Clay had the right to rely on those motions for rehearing, Dickey Clay still did not comply with the provisions of K.S.A. 66-118c because Dickey Clay's petition for judicial review was not filed within 30 days of the KCC denial of those motions for rehearing.

The rule is well established that the time for taking an administrative appeal, as prescribed by statute, is jurisdictional and delay beyond the statutory time is fatal. *Lakeview Village, Inc. v. Board of Johnson County Comm'rs,* 232 Kan. 711, Syl. ¶ 5, 659 P.2d 187 (1983); *Vaughn v. Martell,* 226 Kan. 658, 603 P.2d 191 (1979).

The district court, in holding that it lacked jurisdiction in the case, stated that Dickey Clay's motion to intervene had been denied and it was not a party to the proceedings before the KCC. Dickey Clay had notice of the proceedings and chose not to file a motion to intervene until May 20, 1985. That was after the KCC had held a public hearing on the issue, had issued the orders in question, and had denied the application of the City of Pittsburg and the Gas Service Company for a rehearing. The court noted that one of the requirements for intervention is that it be timely, and that Dickey Clay's actions could hardly be called timely. We agree with the ruling of the district court that Dickey Clay did not take timely steps to become a party to the proceedings or to perfect its appeal. We hold that the trial court did not err in sustaining the motion of the KCC to dismiss Dickey Clay's appeal for want of jurisdiction for failure to comply with the mandatory provisions of K.S.A. 66-118a and K.S.A. 66-118c.

The second issue on the appeal is whether the trial court erred in concluding that Dickey Clay did not have an independent action for judicial review pursuant to K.S.A. 77-601 *et seq.*

K.S.A. 77-602 sets forth the definitions used in the act. K.S.A. 77-602(e) defines "order" to mean "an agency action of particular applicability that determines the legal rights, duties, privileges, immunities, or other legal interests of one or more specific persons."

K.S.A. 77-606 discusses the relationship of the act to other laws and provides:

"**77-606. Relationship to other laws.** In accordance with K.S.A. 77-603, this act

establishes the exclusive means of judicial review of agency action except if the relief available under this act is not equal or substantially equivalent to the relief otherwise available under law, the relief otherwise available and the related procedures supersede and supplement this act to the extent necessary for their effectuation."

K.S.A. 77-607 addresses persons entitled to review and requires they qualify by (1) having standing (K.S.A. 77-611), (2) having exhausted their administrative remedies (K.S.A. 77-612), and (3) having timely filed a petition for review (K.S.A. 77-613). Standing is discussed in K.S.A. 77-611 as follows:

"**77-611. Standing.** The following persons have standing to obtain judicial review of final or nonfinal agency action:

"(a) A person to whom the agency action is specifically directed;

"(b) a person who was a party to the agency proceedings that led to the agency action;

"(c) if the challenged agency action is a rule and regulation, a person subject to that rule; or

"(d) a person eligible for standing under another provision of law."

In the present case, the challenged agency action was not a rule or regulation under K.S.A. 77-611(c). Likewise, there is no allegation the action was specifically directed toward Dickey Clay, pursuant to 77-611(a). K.S.A. 77-611(b) provides standing if the person was a party to the agency proceeding. K.S.A. 77-602(b) defines "party to agency proceedings" or "party" to mean (1) a person to whom the agency action is specifically directed; or (2) a person named as a party to any agency proceeding or allowed to intervene or participate as a party in the proceeding. Because the action was not specifically directed toward Dickey Clay and Dickey Clay failed to intervene, it does not have standing under 77-611(a) or (b). Finally, there is no indication by Dickey Clay that it is a person eligible for standing under another provision of the law. Thus, Dickey Clay lacks standing to file a petition for judicial review under K.S.A. 77-601 *et seq.*

The second requirement is that the person exhaust administrative remedies. K.S.A. 77-612 provides:

"**77-612. Exhaustion of administrative remedies.** A person may file a petition for judicial review under this act only after exhausting all administrative remedies available within the agency whose action is being challenged and within any other agency authorized to exercise administrative review, but:

"(a) A petitioner for judicial review of a rule or regulation need not have

participated in the rulemaking proceeding upon which that rule and regulation is based, or have petitioned for its amendment or repeal; and

"(b) a petitioner for judicial review need not exhaust administrative remedies to the extent that this act or any other statute states that exhaustion is not required."

We agree with the trial court that by Dickey Clay's failure to timely intervene in the proceedings before the KCC, it failed to exhaust its administrative remedies.

We hold that the trial court was correct in concluding that Dickey Clay did not have an independent action for judicial review pursuant to K.S.A. 77-601 *et seq.* because it failed to exhaust its administrative remedies as required by K.S.A. 77-607 and K.S.A. 77-612.

The judgment of the district court is affirmed.

ALLEGRUCCI, J., not participating.