189 P.3d 494 (2008)
The BOARD OF COUNTY COMMISSIONERS OF SUMNER COUNTY, Kansas; Tri-County Concerned Citizens, Inc., A Kansas Not For Profit Corporation; and Dalton Holland, An Individual, Appellants,
v.
Honorable Roderick L. BREMBY, In His Official Capacity as Secretary of the Kansas Dept. of Health and Environment, The Kansas Dept. of Health and Environment, and Waste Connections of Kansas, Inc., A Kansas Corporation, Appellees.
No. 96,658.
Supreme Court of Kansas.
July 25, 2008.
*497 Robert V. Eye, of Irigonegaray & Associates, of Topeka, argued the cause, and Robert J. Vincze, of Law Offices of Robert J. Vincze, of Lone Tree, Colorado, and Kelly J. Kauffman, of Kauffman Law Office, of Topeka, were with him on the briefs for appellants Board of County Commissioners of Sumner County, Kansas, Tri-County Concerned Citizens, Inc., and Dalton Holland.
John Terry Moore, of Moore Martin, L.C., of Wichita, argued the cause and was on the briefs for appellee Waste Connections of Kansas, Inc.
Nancy L. Ulrich, of Kansas Department of Health and Environment, was on the brief for appellees Secretary of KDHE and KDHE.
W.C. Blanton, of Husch Blackwell Sanders LLP, of Kansas City, Missouri, and Mark D. Calcara and Mark A. Rondeau, of Watkins Calcara, Chtd., of Great Bend, were on the brief for amicus curiae Holcomb Common Facilities, LLC.
The opinion of the court was delivered by DAVIS, J.:
The Secretary of the Kansas Department of Health and Environment (KDHE), Roderick Bremby, issued a permit to Waste Connections of Kansas, Inc. (Waste Connections), for the construction of a landfill in Harper County, Kansas. The Board of Commissioners of Sumner County, Kansas (the Board), Tri-County Concerned Citizens, Inc. (Tri-County), and Dalton Holland filed a petition for review in district court under the Kansas *498 Act for Judicial Review and Civil Enforcement of Agency Actions (KJRA), K.S.A. 77-601 et seq., challenging the issuance of the permit. The district court dismissed their petition for lack of standing. The Kansas Court of Appeals reversed, concluding that appellants each had standing as a party to the agency proceedings under the KJRA. Board of Sumner County Comm'rs v. Bremby, 38 Kan.App.2d 557, 168 P.3d 1034 (2007). We granted Waste Connections' petition for review, affirm the decision of the Court of Appeals reversing the district court, and remand the case for further proceedings.

FACTS
In August 2002, Waste Connections applied to the KDHE for a permit to construct and operate a municipal solid waste landfill in Harper County. Included in the application was a site plan prepared by Golder Associates, which included an analysis of the suitability of the locationcommonly known as Plumb Thicketfor the proposed landfill.
In September 2002, the Board commissioned a study by Terrane Resources Co. (Terrane) to evaluate the Golder site plan and analysis of the Plumb Thicket location. Terrane concluded that Waste Connections' plan had numerous regulatory and environmental deficiencies. The Terrane report was submitted to the KDHE in May 2003.
Between August 2002 and September 2005, the KDHE held public hearings in Harper County regarding the proposed permit for the Plumb Thicket Landfill site. Among others, members of Tri-County were present at the hearing and voiced concerns as to the proposed location of the landfill. Tri-County is an organization formed to preserve and enhance the quality of life in Harper, Kingman, and Sumner Counties and to promote environmental protection.
Dalton Holland, a member of Tri-County, was present at the public hearing and expressed his concerns about the proposed landfill site. Holland owned a life estate in 400 acres in Kingman County on property lying directly north of the proposed landfill site. This property included a pond that drains a portion of the area where the landfill would be located.
In the summer of 2005, Burns & McDonnell conducted a peer review study of the Golder site plan-the plan on which Waste Connections based its request for a landfill permit. The Burns & McDonnell study pointed out additional deficiencies in Waste Connections' site plan, including problems with the plan's hydrogeologic reports as well as the potential for groundwater contamination. This plan was provided to the Board, KDHE, and Waste Connections.
The KDHE issued a permit to Waste Connections in August 2005 to construct the Plumb Thicket Landfill. At that time, the KDHE also responded to comments that had previously been submitted regarding the permit. The summary section of the KDHE's responses indicated that of the 317 "units of communication" it had received regarding the proposed landfill, 290 expressed opposition to the landfill, 20 expressed support of the landfill, and 7 did not indicate a particular stance. The responses addressed groups of related concerns, and the names of the people who submitted the original comments were omitted. The responses also did not make specific reference to the Terrane study or the Burns & McDonnell peer review.
Shortly thereafter, the Board, Tri-County, and Holland (appellants) filed a petition in Shawnee County District Court under the KJRA for judicial review, seeking an order to set the permit aside or to remand with directions that the KDHE take into account the studies by Terrane and Burns & McDonnell. The appellants claimed standing under K.S.A. 77-611(b) and (d) as parties to the agency proceedings that led to the agency action and as persons eligible for standing under other provisions of Kansas law.
The petition asserted that the KDHE failed to collect adequate information regarding the potential contamination from the Plumb Thicket site to support its decision. In particular, the appellants noted that the Terrane and Burns & McDonnell studies, which indicated that there were several regulatory and environmental problems with the proposed landfill, were apparently not factored into the KDHE's decision to grant the permit. According to the allegations in the *499 petition, the KDHE's failure to take into consideration several deficiencies in Waste Connections' proposed site plan could affect, among other things, the quality of the groundwater in the area and the quality of water in the Chikaskia Rivera source of water for some residents of Sumner County.
The petition further stated that the proposed landfill could cause damage to real property bordering the site, including property owned by Holland.
Waste Connections was allowed to intervene and filed a motion to dismiss or, in the alternative, a motion for a more definite claim, asserting that the appellants lacked standing to bring the action under the KJRA because they had not suffered a cognizable injury and that appellants failed to state a cause of action.
The district court granted the motion to dismiss based upon its conclusion that appellants lacked standing under K.S.A. 77-611. According to the court, the KDHE's permit was directed at Waste Connections, not the appellants. See K.S.A. 77-611(a). Moreover the court concluded that KDHE did not hold any proceedings pursuant to the Kansas Administrative Procedure Act, K.S.A. 77-501 et seq., so the appellants could not have been parties to those proceedings within the meaning of K.S.A. 77-611(b). The appellants appealed.
The Court of Appeals reversed the district court, concluding that the appellants had standing as parties to the agency proceedings under K.S.A. 77-611(b) pursuant to our opinion in Families Against Corporate Takeover v. Mitchell (FACT), 268 Kan. 803, 1 P.3d 884 (2000). Board of Sumner County Comm'rs, 38 Kan.App.2d at 561-63, 168 P.3d 1034. The court also concluded that Tri-County met the requirements for organizational standing under this court's decision in NEA-Coffeyville v. U.S.D. No. 445, 268 Kan. 384, 387, 996 P.2d 821 (2000). Board of Sumner County Comm'rs, 38 Kan.App.2d at 563-64, 168 P.3d 1034. The Court of Appeals made no findings, however, as to the traditional standing of either the Board or Holland.
We granted Waste Connections' petition for review.

DISCUSSION
Standing is "one of the most amorphous concepts in the entire domain of public law. [Citation omitted.]" Harrison v. Long, 241 Kan. 174, 176, 734 P.2d 1155, appeal dismissed 484 U.S. 804, 108 S.Ct. 50, 98 L.Ed.2d 15 (1987); see also 312 Education Ass'n v. U.S.D. No. 312, 273 Kan. 875, 882, 47 P.3d 383 (2002) (quoting Harrison). We have explained that if a person does not have standing to challenge an action or to request a particular type of relief, then "there is no justiciable case or controversy" and the suit must be dismissed. Kansas Bar Ass'n v. Judges of the Third Judicial Dist., 270 Kan. 489, 490, 14 P.3d 1154 (2000). When a person who does not have standing to file suit nevertheless asks for relief, it is tantamount to a request for an advisory opinion. See 270 Kan. at 491, 14 P.3d 1154. Advisory opinions are an executive, not a judicial, power. State ex rel. Morrison v. Sebelius, 285 Kan. 875, 885, 179 P.3d 366 (2008).
The district court ruled that the appellants in this case lacked standing because they were not parties under the KJRA. This Act has its own standing provisions that govern who may seek review of agency determinations. See K.S.A. 77-611. Thus, before determining whether the appellants have standing under traditional standards governing standing in this state, we must consider whether the appellants meet the standing requirements of the KJRA. See FACT, 268 Kan. at 807, 1 P.3d 884. If we determine that the appellants do have standing to challenge the agency action in this case under the KJRA, we must also consider whether they meet the traditional tests for individual and associational standing under Kansas law. Before considering these questions, however, we briefly examine the standards that govern our review.

STANDARD OF REVIEW
The ultimate question before this court on petition for review is whether the appellants had standing to challenge the KDHE's issuance of a permit for the construction *500 and operation of a landfill in Harper County. Standing is a jurisdictional question whereby courts determine "whether the plaintiff has alleged such a personal stake in the outcome of a controversy as to warrant invocation of jurisdiction and to justify exercise of the court's remedial powers on his or her behalf." Moorhouse v. City of Wichita, 259 Kan. 570, 574, 913 P.2d 172 (1996). A party must have a sufficient stake in the outcome of an otherwise justiciable controversy in order to obtain judicial resolution of that controversy. Harrison, 241 Kan. at 176, 734 P.2d 1155. Because standing implicates the court's jurisdiction to hear a case, the existence of standing is a question of law over which this court's scope of review is unlimited. 312 Education Ass'n, 273 Kan. at 882, 47 P.3d 383.
Additionally, we must bear in mind that this case comes before us after the district court granted Waste Connections' motion to dismiss. The district court's ruling was made before commencement of discovery. Under these circumstances, we accept the facts alleged in the petition as true, along with any inferences that can be reasonably drawn therefrom. If those facts and inferences demonstrate that the appellants have standing to sue, the decision of the district court must be reversed. See McCormick v. Board of Shawnee County Comm'rs, 272 Kan. 627, 634, 35 P.3d 815 (2001), cert. denied 537 U.S. 841, 123 S.Ct. 170, 154 L.Ed.2d 65 (2002).

(1) STANDING UNDER THE KJRA
The KJRA recognizes four categories of persons who have standing to seek judicial review of an agency action, as set forth in K.S.A. 77-611:
"(a) A person to whom the agency action is specifically directed;
"(b) a person who was a party to the agency proceedings that led to the agency action;
"(c) if the challenged agency action is a rule and regulation, a person subject to that rule; or
"(d) a person eligible for standing under another provision of law."
The appellants claim that they have standing to challenge the KDHE's issuance of the landfill permit to Waste Connections under either subsection (b), as parties to the agency proceedings that led to the action, or subsection (d), as persons eligible under another provision of law. The Court of Appeals held that the appellants have standing to sue under subsection (b) pursuant to this court's decision in FACT. Board of Sumner County Comm'rs, 38 Kan.App.2d at 561, 168 P.3d 1034. Waste Connections argues that the Court of Appeals' interpretation of K.S.A. 77-611(b) in this case was erroneous because the court failed to take into account the definition of a party under K.S.A. 77-602(f) and focused on the appellants' participation in the agency determination instead of their participation as parties to the proceedings.
The KJRA defines "party to agency proceedings," as the term is used in K.S.A. 77-611(b), as "[a] person to whom the agency action is specifically directed" or "a person named as a party to any agency proceeding or allowed to intervene or participate as a party in the proceeding." (Emphasis added.) K.S.A. 77-602(f); see also W.S. Dickey Clay Mfg. Co. v. Kansas Corp. Comm'n, 241 Kan. 744, 750, 740 P.2d 585 (1987) (applying K.S.A. 77-602[f][2]). The district court correctly determined that KDHE's grant of permit to Waste Connections was not specifically directed at the appellants. Likewise, none of the appellants were named as a party during the permit process, and none of them formally intervened in that process. We may only find that the appellants have standing as "part[ies] to the agency proceedings" under K.S.A. 77-611(b) if they were "allowed to ... participate as [parties] in the proceeding" under K.S.A. 77-602(f)(2).
We have discussed K.S.A. 77-602(f)(2) in only one previous caseDickey Clay, 241 Kan. 744, 740 P.2d 585. In that case, W.S. Dickey Clay Manufacturing Company sought judicial review of orders by the Kansas Corporation Commission (KCC) relating to a franchise agreement between the City of Pittsburg and the Gas Service Company. Although the KCC provided notice of the proceedings regarding the franchise agreement, Dickey Clay was not a "`party, intervenor or *501 protestant'" in that process. 241 Kan. at 746, 740 P.2d 585. The KCC also held a public hearing regarding the agreement; an employee of Dickey Clay attended this hearing but "`did not formally enter an appearance, present any testimony, or otherwise participate.'" 241 Kan. at 746, 740 P.2d 585. Only after the KCC issued the orders in question and denied requests by the City of Pittsburg and the Gas Service Company for a rehearing did Dickey Clay file a motion to intervene. The KCC denied this motion.
Dickey Clay filed a petition for judicial review under the KJRA. The district court ruled that Dickey Clay's motion for intervention was untimely, and this court agreed that Dickey Clay "did not take timely steps to become a party to the proceedings or to perfect its appeal." 241 Kan. at 749, 740 P.2d 585.
More important, we held that Dickey Clay could not challenge the agency action because it did not have standing under K.S.A. 77-611, basing our decision on the definition of a party in K.S.A. 77-602(f). After quoting the language of K.S.A. 77-602, this court explained that "[b]ecause the action was not specifically directed toward Dickey Clay and Dickey Clay failed to intervene, it does not have standing under [K.S.A.] 77-611(a) or (b)." 241 Kan. at 750, 740 P.2d 585.
Amicus curiae Holcomb Common Facilities, LLC (Holcomb Facilities), argue that this court's decision in Dickey Clay indicates that a person may only have standing under K.S.A. 77-611(b) if the person was a named party in the agency proceeding or successfully intervened in that proceeding. We do not agree that Dickey Clay defines "party" so narrowly.
Throughout Dickey Clay, this court indicated that Dickey Clay did not participate in the agency proceedings regarding the franchise agreement until after the KCC had issued its orders. See 241 Kan. at 746, 749, 740 P.2d 585. Although the court did state that Dickey Clay did not have standing under K.S.A. 77-611(b) because it was not a named party and failed to intervene, we did not consider whether Dickey Clay was a "party" under K.S.A. 77-602(f)(2) as a person "allowed to ... participate as a party in the [agency] proceeding" under K.S.A. 77-611(b), which is the precise issue that must be resolved in the case we now consider. Had Dickey Clay participated at all in the process leading up to issuance of the orders in question as a "protestant" to the agency action as appellants did in this case, Dickey Clay may have been decided differently. See 241 Kan. at 746, 740 P.2d 585.
The question before us is one of first impression calling for construction of the statutory language in K.S.A. 77-602(f)(2) that defines a "[p]arty to agency proceedings" or "party" as "a person ... allowed to ... participate as a party in the proceeding." The interpretation of a statute is a question of law that an appellate court reviews de novo. LSF Franchise REO I v. Emporia Restaurants, Inc., 283 Kan. 13, 19, 152 P.3d 34 (2007).
When courts are called upon to interpret statutes, the fundamental rule governing our interpretation is that "the intent of the legislature governs if that intent can be ascertained. The legislature is presumed to have expressed its intent through the language of the statutory scheme it enacted." State ex rel. Stovall v. Meneley, 271 Kan. 355, 378, 22 P.3d 124 (2001). For this reason, when the language of a statute is plain and unambiguous, courts "need not resort to statutory construction." In re K.M.H., 285 Kan. 53, 79, 169 P.3d 1025 (2007). Instead, "[w]hen the language is plain and unambiguous, an appellate court is bound to implement the expressed intent." State v. Manbeck, 277 Kan. 224, Syl. ¶ 3, 83 P.3d 190 (2004).
Where a statute's language is subject to multiple interpretations, however, a reviewing court "may look to the historical background of the enactment, the circumstances attending its passage, the purpose to be accomplished, and the effect the statute may have under the various constructions suggested. [Citation omitted.]" Robinett v. The Haskell Co., 270 Kan. 95, 100-01, 12 P.3d 411 (2000). Generally, courts should construe statutes to avoid unreasonable results and should presume that the legislature does not intend to enact useless or meaningless legislation. Hawley v. Kansas Dept. of Agriculture, *502 281 Kan. 603, 631, 132 P.3d 870 (2006). We ascertain the legislature's intent behind a particular statutory provision "from a general consideration of the entire act. Effect must be given, if possible, to the entire act and every part thereof. To this end, it is the duty of the court, as far as practicable, to reconcile the different provisions so as to make them consistent, harmonious, and sensible. [Citation omitted.]" In re Marriage of Ross, 245 Kan. 591, 594, 783 P.2d 331 (1989); see also State ex rel. Morrison v. Oshman Sporting Goods Co. Kansas, 275 Kan. 763, Syl. ¶ 2, 69 P.3d 1087 (2003). Thus, in cases that require statutory construction, "courts are not permitted to consider only a certain isolated part or parts of an act but are required to consider and construe together all parts thereof in pari materia." Kansas Commission on Civil Rights v. Howard, 218 Kan. 248, Syl. ¶ 2, 544 P.2d 791 (1975).
As we have previously indicated in this opinion, the KJRA's definition of "party to agency proceedings" as someone who is allowed to participate "as a party" to the agency proceedings is far from clear. See K.S.A. 77-602(f)(2); K.S.A. 77-611(b). We therefore must employ principles of statutory construction to determine what the legislature intended when it adopted the standing provisions of the KJRA.
Black's Law Dictionary 1154 (8th ed.2004) defines a "party" as "[o]ne who takes part in a transaction." In other words, the determination as to whether a person is a party is defined by that person's participation in a lawsuit or other action (such as the drafting of a contract). This definition is consistent with the principles of the KJRA because K.S.A. 77-602(f) and K.S.A. 77-611(b) indicate that a person is a party for purposes of standing if that person "participate[d]" in the agency "proceedings." This court must therefore determine what is meant by an agency proceeding and what is required in terms of participation in that proceeding.
Waste Connections argues that an agency proceeding, as the term is used in the KJRA, should be narrowly interpreted as being synonymous with "hearing" or "adjudication." It does not offer any support for or explanation of this interpretation. Our review of other provisions of the KJRA, however, reveals that the legislature intended for the term "proceeding" to be read more broadly.
K.S.A. 77-612, which requires that persons exhaust all administrative remedies before filing a petition for judicial review under the KJRA, states as an exception to this requirement that "[a] petitioner for judicial review of a rule or regulation need not have participated in the rulemaking proceeding upon which that rule and regulation is based." (Emphasis added.) K.S.A. 77-612(a). Administrative rulemaking generally does not involve public hearings unless specifically provided for by other statutes or regulations. Instead, rulemaking generally involves a proposed rule, a public notice and comment period, and the issuance of a final rule along with responses to the comments. See generally K.S.A. 77-415 et seq. (setting forth the procedures for administrative rulemaking). Despite these limited procedures, the KJRA refers to the rulemaking process as a proceedingthe same term used in its definition of standing under K.S.A. 77-611(b).
Likewise, K.S.A. 77-615, which governs the notice requirements for petitions of judicial review, specifically refers to "adjudicative proceedings." (Emphasis added.) K.S.A. 77-615(b). If the legislature intended the term "proceeding" as it is used in the KJRA to refer only to adjudications, there would have been no reason to include this descriptive qualification in the notice statute. In the same way, the legislature could have limited standing under the K.S.A. 77-611(b) to persons who participated in adjudicative proceedings as it did in terms of notice under K.S.A. 77-615(b), but it did not do so.
Reading these statutes together, we find the legislature intended the term "proceeding" as it is used in the KJRA to be read broadly to refer to the process by which an agency carries out its statutory duties. Under this broad reading, we find that the permit process that the KDHE undertakes when considering whether to grant a landfill permit is a proceeding within the meaning of the KJRA.
*503 The landfill permit process is governed by K.A.R. 28-29-6a. This regulation provides that "any interested person may submit written comments" during the public comment period and these comments "shall become a part of the permit record and shall be considered in making a final decision on the proposed permit action." K.A.R. 28-29-6a(b). The regulation further states that the KDHE may schedule a public hearing if "there is sufficient local interest in a proposed permit action" and "[a]ll written and verbal comments received during a public hearing ... shall become a part of the permit record and be considered in making a final decision on the proposed permit action." K.A.R. 28-29-6a(c).
The appellants allege in their petition for judicial review that they participated in the permit process under both of these sections. In particular, the Board commissioned the Terrane study to evaluate Waste Connections' proposed site plan and submitted that study to the KDHE. Members of Tri-County, including appellant Holland, attended the public hearings held during the landfill process and submitted comments to the KDHE at that time. We must determine whether this participation was sufficient to confer standing under K.S.A. 77-602(f) and K.S.A. 77-611(b).
Although we did not discuss participation in terms of K.S.A. 77-602, our decision in FACT focused on the question of participation in agency proceedings under K.S.A. 77-611(b). In that case, a nonprofit organization challenged the KDHE's issuance of a permit to Murphy Farms, Inc., for a hog farm. The agency had granted the permit under the National Pollution Discharge Elimination System (NPDES), a delegated federal permitting program under the Clean Water Act, 33 U.S.C. § 1251 et seq. (1994). Members of FACT (the organization) submitted comments and participated in a public hearing before the permit was issued. After the KDHE granted the permit, FACT formally requested that the permit be revoked, as the governing regulations required.
When the KDHE did not respond to FACT's request for a revocation of the permit, FACT filed a petition for judicial review under the KJRA. The district court dismissed the petition under K.S.A. 60-212(b)(6), ruling that FACT lacked standing to sue.
We reversed, finding that FACT had standing under both K.S.A. 77-611(b) and the traditional test for organizational standing discussed in NEA-Coffeyville v. U.S.D. No. 445, 268 Kan. 384, 387, 996 P.2d 821 (2000). FACT, 268 Kan. at 810-11, 1 P.3d 884. In reaching this conclusion, we found that before we could consider the question of organizational standing, we were required to determine whether FACT had standing under the KJRA. 268 Kan. at 807, 1 P.3d 884. Although we rejected the organization's claims that it had standing under K.S.A. 77-611(d), this court ultimately concluded that FACT had participated as a party to the agency proceedings, explaining:
"FACT argues that it fully participated in the permitting process as allowed by K.A.R. 28-16-61. K.A.R. 28-16-61(b) requires KDHE to provide for a public notice and comment period during the NPDES permitting process. During the public comment period, any interested person may submit written comments on a draft permit and may request a public hearing. K.A.R. 28-16-61(c). `All comments shall be considered in making the final decision and shall be answered as provided in subsection (e) of this regulation.' K.A.R. 28-16-61(c). Clearly KDHE must allow citizens to comment on its proposed permits, and it also must respond to their comments.
"At the request of FACT and others, a public meeting was held in Hodgeman County. At that meeting, members of FACT and two consultants hired by FACT submitted comments on the pending permit for Murphy's hog farm....
"FACT participated in the agency proceedings (permit review and public comment) that led to the agency action (granting the permit). During oral argument before us, KDHE's counsel said: `[T]hose citizens did both as a group and individually have the opportunity to participate in the permitting process through the public hearing process, through the opportunity *504 to submit comments on the permit.' We hold that FACT is entitled to assert standing as a `person who was a party to the agency proceedings that led to the agency action' under K.S.A. 77-611(b)." 268 Kan. at 810, 1 P.3d 884.
The court also determined that FACT had organizational standing under the three-prong test of NEA-Coffeyville. FACT, 268 Kan. at 810-11, 1 P.3d 884.
Our discussion in FACT demonstrates that interested persons' submission of written comments during a public notice and comment period and all persons' comments made during a public hearing held by an agency both qualify as participation within the meaning of the KJRA's standing requirements. In its decision in this case, the Court of Appeals correctly found that the actions of FACT were analogous to the actions of the appellants here. See Board of Sumner County Comm'rs, 38 Kan.App.2d at 561-63, 168 P.3d 1034.
Waste Connections argues that the Court of Appeals' reliance on FACT was unfounded because it failed to take into account the regulatory differences between the NPDES process in FACT and the landfill permit process in this case. For support of this claim, Waste Connections cites the last paragraph in FACT, whereafter having determined that FACT had standing under the KJRA and NEA-Coffeyville, see 268 Kan. at 810-11, 1 P.3d 884the court closed with the following observation:
"The KDHE administrative regulations support FACT's standing as a `party.' K.A.R. 28-16-62(g) specifically governs the procedures for modifying, revoking, reissuing, and terminating NPDES permits. Any interested person may request that a permit be modified, revoked, reissued, or terminated. K.A.R. 28-16-62(g)(1) (as FACT did here). Denials of such requests are not subject to public notice, comment, or hearings. However, the regulations state that this informal process is `a prerequisite to seeking judicial review of agency action' in denying the request. K.A.R. 28-16-62(g)(2). This is a clear indication that citizens are allowed to both comment on proposed NPDES permits and seek judicial review of permit granting." 268 Kan. at 811, 1 P.3d 884.
Waste Connections asserts that these observations by the court indicate its holding was based in part on the NPDES process' provision stating that "[a]ny person" may request that a permit be revoked, and such a request was a prerequisite for seeking review under the KJRA. Waste Connections points out that no such provision exists in the landfill permit process.
There are several problems with Waste Connections' interpretation of FACT. First, the above quoted language in FACT followed our determination that FACT had both standing under K.S.A. 77-611(b) and NEA-Coffeyville. See 268 Kan. at 810-11, 1 P.3d 884. We explained that the specific provisions of the NPDES permit process "support[ed]" our previous conclusion; we did not state that our decision in FACT was based on the particularities of that process. The Court of Appeals correctly found that this court's observations in the above quoted language were illustrative ofnot inherent toits decision. See Board of Sumner County Comm'rs, 38 Kan.App.2d at 561-63, 168 P.3d 1034.
In addition, Waste Connections' narrow interpretation of FACT is contrary to our previous conclusion that the term "proceeding" should be read broadly under the KJRA. Our consideration of whether a person participated in the underlying proceedings for purposes of the KJRA is guided by the particular process governing an agency action. The fact that different actions may be subject to different processes does not necessarily render participation in those processes any less meaningful for purposes of standing under the KJRA.
The Court of Appeals correctly found that the appellants' actions in this case qualified as participation under the KJRA pursuant to this court's decision in FACT. The appellants' petition states that the Board submitted comments to the KDHE along with the Terrane study that the Board commissioned. The petition similarly states that members of Tri-County, including Holland, offered comments and expressed concerns at *505 the public hearings held in Harper County. On the face of the petition and all inferences drawn therefrom, the appellants have demonstrated that they participated in the agency proceedings that led to the KDHE's issuance of the permit in this case. We affirm the Court of Appeals conclusion that the appellants have standing to file a petition for judicial review under K.S.A. 77-611(b).
Before turning to the question of whether the appellants meet the requirements of standing under the traditional tests for individuals and associations, we find that two additional clarifications should be made regarding arguments raised by Waste Connections and amicus Holcomb Facilities.
First, Waste Connections argues extensively in its petition for review that the appellants have not substantiated the claims regarding their participation in the agency proceedings with evidence. This claim is without merit, as the underlying action was dismissed for lack of standing on the face of the petition itself before discovery had commenced. As such, we only consider the allegations of the petition itself-and all reasonable inferences therefrom-in determining whether the appellants have standing to file the petition for judicial review. See McCormick v. Board of Shawnee County Comm'rs, 272 Kan. 627, 634, 35 P.3d 815 (2001), cert. denied 537 U.S. 841, 123 S.Ct. 170, 154 L.Ed.2d 65 (2002).
Second, amicus Holcomb Facilities argues that a ruling that the appellants have standing under the KJRA would lead to unworkable notice requirements in light of K.S.A. 77-615(b). This statute provides that a petitioner "shall give notice of the petition for judicial review to all other parties in any adjudicative proceedings that led to the agency action." Amicus argues that if we determine the appellants have standing under K.S.A. 77-611(b), K.S.A. 77-615(b) would require notice be given to at least the 317 persons who submitted comments to the KDHE regarding the permit in question.
These concerns are unfounded. K.S.A. 77-615(b) relates only to adjudicative proceedings, not to the permit process at issue in this case. In adjudications, which are quasi-judicial in nature, the notice requirement of K.S.A. 77-615(b) would not be any more unwieldy than the notice requirements in complicated civil cases. In all other cases, petitioners for judicial review need only serve notice "upon the agency head, on any other person or persons designated by the agency head to receive service, on any agency officer designated to receive service in an order or on the agency officer who signs an order." K.S.A. 77-615(a). The appellants in this case complied with this requirement.
Because the appellants participated in the landfill permit process in this case by offering written and oral comments, the appellants have standing to challenge the KDHE's issuance of the permit under K.S.A. 77-611(b).

(2) TRADITIONAL STANDING TESTS
In order to have standing to file suit in Kansas courts, the appellants must also demonstrate that they meet the traditional requirements for standing previously articulated by this court. See FACT, 268 Kan. at 807, 810-11, 1 P.3d 884. In particular, a person must demonstrate that he or she suffered a cognizable injury and that there is a causal connection between the injury and the challenged conduct. See Moorhouse v. City of Wichita, 259 Kan. 570, 574, 913 P.2d 172 (1996); Harrison v. Long, 241 Kan. 174, 176-77, 734 P.2d 1155, appeal dismissed 484 U.S. 804, 108 S.Ct. 50, 98 L.Ed.2d 15 (1987). An association has standing to sue on behalf of its members when "(1) the members have standing to sue individually; (2) the interests the association seeks to protect are germane to the organization's purpose; and (3) neither the claim asserted nor the relief requested require participation of individual members. [Citation omitted.]" NEA-Coffeyville v. U.S.D. No. 445, 268 Kan. 384, 387, 996 P.2d 821 (2000).
In its petition for review, Waste Connections argues that the Court of Appeals erred in finding that the appellants had standing under these traditional standards because (1) it relied on a previous decision of the Court of Appeals, not on the record in this case, to determine that Tri-County had associational *506 standing; (2) it did not state whether the Board had associational standing under the NEA-Coffeyville standard; and (3) it did not consider whether Holland had standing to challenge the action, as he has apparently died during the pendency of this appeal. Each of these arguments is considered in turn.

Tri-County
The Court of Appeals' conclusion that Tri-County had associational standing relied primarily on another opinion by the Court of AppealsTri-County Concerned Citizens, Inc. v. Board of Harper County Comm'rs, 32 Kan.App.2d 1168, 95 P.3d 1012, rev. denied 278 Kan. 852 (2004)in which Tri-County was also involved. That case involved a zoning challenge to a special use permit for the landfill issued by the Harper County Board. The Court of Appeals determined that Tri-County had standing to challenge that permit because it met the associational standing requirements of NEA-Coffeyville, 268 Kan. at 387, 996 P.2d 821. Tri-County, 32 Kan. App.2d at 1174-75, 95 P.3d 1012.
Waste Connections argues that it was improper for the Court of Appeals to rely on Tri-County because the injury alleged in that casethe injuries to be caused by the special use permitwere qualitatively different than the injury alleged in this case. This argument is without merit. The Court of Appeals' discussion of standing during the zoning appeal demonstrates that the interests considered there dealt with the injuries that members of Tri-County would suffer if a landfill would be approved. The court applied the three-prong test for associational standing, explaining:
"(1) The individual members of the association have standing in their individual capacity since they live within 1,000 feet of the landfill; property owners this close to a landfill site are aggrieved because they potentially suffer a substantial grievance and a loss of a pecuniary interest. (2) Since the stated purpose of the corporation is to protect the environment, the prosecution of this lawsuit is wholly consistent with the association's purpose. (3) The participation of the individual members is not necessarily required." 32 Kan.App.2d at 1174-75, 95 P.3d 1012.
Given the procedural posture of the current appeala dismissal for lack of standing on the basis of the petition itselfthe Court of Appeals in this case should have based its conclusion regarding Tri-County's associational standing on the face of the petition for judicial review and reasonable inferences therefrom, not on another panel's decision involving a similar issue. Nevertheless, an examination of the petition demonstrates that Tri-County meets the requirements for associational standing for reasons similar to those described in the previous appeal.
The petition alleges that members of Tri-County were present at the public hearing held by KDHE and commented on the potential landfill at that hearing. The petition further states that members of Tri-County "will suffer damage to their real property and water supply if the Plumb Thicket landfill site is unsuitable under applicable legal requirements and if it leaks, causing contamination to the soil, groundwater and surface water." It can be inferred from the petition that members of Tri-County will suffer imminent injury if the challenge to issuance of landfill permit is not permitted. The members would therefore have standing to sue individually.
Likewise, the petition states that Tri-County is a nonprofit organization "organized for the purpose or preserving and enhancing the quality of life in Harper, Kingman and Sumner counties." The interests that the association seeks to protect by initiating this actionnamely, ensuring that any landfill that is located in Harper County meet environmental standards to protect the groundwater supply and river waterare germane to this purpose.
Finally, the claim asserted by Tri-County-that the KDHE's decision to grant the permit was arbitrary and capricious in that it did not take into account the concerns addressed in the comments, in particular the Terrane and Burns & McDonnell studies-does not require the participation of the individual members.
*507 We agree with the Court of Appeals' determination that Tri-County meets the standards for associational standing as set forth in NEA-Coffeyville. See 268 Kan. at 387, 996 P.2d 821, 38 Kan.App.2d at 563-64, 168 P.3d 1034.

The Board
Waste Connections asserts that the Court of Appeals erred because it did not determine whether the Board met the requirements for associational standing. Waste Connections correctly points out that government entities must meet the requirements of associational standing in order to bring a cause of action. See Hunt v. Washington Apple Advertising Comm'n, 432 U.S. 333, 343-44, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977).
The petition states that the Board is "charged with protecting the health, safety and general welfare of its citizens pursuant to" K.S.A. 19-101 et seq. The petition also states that the proposed landfill could contaminate the water in the Chikaskia River, which provides a water source for some residents of Sumner County, if the site fails to meet certain regulatory and environmental standards. It appears from the face of the petition that these individuals represented by the Board would have standing to challenge the agency's decision under the traditional injury test. Such a challenge is consistent with the Board's charge to protect the residents of Sumner County, and the challenge to the KDHE's issuance of the permit does not require the participation of individual residents. Based on the allegations of the petition, we conclude that the Board has standing to bring suit under the traditional associational standing test.

Holland
Waste Connections contends that Holland does not have standing to sue because he has died during the course of this appeal and only owned a life estate in the property that the petition alleges to be implicated.
The petition states that Holland "owns a life estate in 400 acres in Kingman County ... directly north of the proposed Plumb Thicket landfill" and that this property "contains a pond that drains a portion of the proposed Plumb Thicket landfill site." The petition further states that this property "and its water supply can and will be irreparably harmed by the improper permitting, development and operation of the Plumb Thicket landfill."
From the face of the petition, Holland demonstrated that he had a sufficient interest in the outcome of this case to have standing to sue individually. If it is true that Holland has died and only had a life estate in that property, it may be that he (or his estate) no longer has a justiciable interest in this controversy. Given the procedural posture of the case before us, however, we hold that Holland should not be dismissed from the case for lack of standing on the basis of the petition alone, though the district court may determine during the course of the case that his estate no longer has a cognizable interest in the outcome.

CONCLUSION
Based on the allegations of the petition in this case, the appellants have standing to challenge the KDHE's issuance of the landfill permit to Waste Connections under the KJRA and under traditional standing requirements. The district court erred when it dismissed the petition for lack of standing.
The decision of the Court of Appeals reversing the district court is affirmed; the decision of the district court is reversed, and the case is remanded for further proceedings consistent with this opinion.
JOHNSON, J., not participating.
JACK L. BURR, District Judge, assigned.[1]
NOTES
[1] REPORTER'S NOTE: District Judge Burr was appointed to hear case No. 96,658 vice Justice Johnson pursuant to the authority vested in the Supreme Court by art. 3, § 6(f) of the Kansas Constitution.