No. 102,498

GARY L. COCHRAN and JERRI COCHRAN, *Appellees*, v. THE STATE OF KANSAS, DEPARTMENT OF AGRICULTURE, DIVISION OF WATER RESOURCES, and THE CITY OF WICHITA, KANSAS, *Appellants*.

(249 P.3d 434)

Opinion filed March 25, 2011.

*Burke W. Griggs*, of Division of Water Resources, argued the cause and was on the briefs for appellant State of Kansas.

*Brian K. McLeod*, deputy city attorney, argued the cause and *Joe Allen Lang*, chief deputy city attorney, was on the brief for appellant City of Wichita.

*Nancy Ogle*, of Ogle Law Office, L.L.C., of Wichita, argued the cause, and *John F. Reals*, of Law Offices of John F. Reals, of Wichita, was with her on the brief for appellees.

The opinion of the court was delivered by

SMITH, J.: This case arises out of a determination by the district court that Gary and Jerri Cochran have standing to seek judicial review of the determinations made by the Chief Engineer of the Division of Water Resources granting the applications of the City

of Wichita to appropriate water for beneficial use. We affirm the district court.

FACTUAL AND PROCEDURAL HISTORY

There is no dispute of any essential fact.

In 1993, the City of Wichita, Kansas adopted an "Integrated Local Water Supply Plan" to serve Wichita and surrounding cities and rural water districts through 2050. As part of that plan the City of Wichita, Water & Sewer Department (the City), applied to the Department of Agriculture, Division of Water Resources (DWR) for permits to appropriate water for beneficial use, File Nos. 45,296, 45,297, 45,298, 45,299, 45,300, and 45,301. The City sought to divert groundwater from the Equus Beds aquifer and Arkansas River bank storage water from an area known as the "Bently Well Field." The Chief Engineer approved the applications, and the permits were issued on or about February 6, 2008.

Gary L. and Jerri Cochran (the Cochrans) are owners of prior water appropriation rights with points of diversion in the vicinity of the authorized points of diversion for the City's permits. During the permit process, the DWR received input from the Cochrans and their legal counsel, who expressed concerns that their prior appropriation rights may be affected by the City's proposed appropriation. Despite these concerns, the DWR approved the City's applications for the permits.

The permits issued to the City included provisions to prevent impairment of existing water appropriation rights. For example, the Chief Engineer reserved the right to review the available hydrologic data and make modifications to the conditions of approval, including revocation of the permit if the use of water as authorized was found to exceed the long-term sustainable yield of the aquifer, or caused impairment to existing water rights. Gary Cochran received a copy of the permits.

After the permits were issued, the Cochrans sent a letter to the Kansas Department of Agriculture, requesting a hearing regarding issuance of the permits. The Chief Engineer of the DWR entered an initial order denying the Cochrans' request on March 26, 2008, finding that the Cochrans lacked standing under K.S.A. 82a-711(c)

to request a hearing challenging the City's permits. The Chief Engineer found that only the applicant enjoyed standing to appeal the determination relying on K.S.A. 82a-711(c). The Cochrans then filed a timely petition for administrative review of the Chief Engineer's order with the Secretary of the Department of Agriculture. The Secretary, in turn, issued an order, finding that the Cochrans lacked standing under K.S.A. 82a-711(c). The Secretary determined that K.S.A. 82a-711(c) conferred standing to request judicial review of a permit only to the applicant for a permit and not to third parties.

On May 30, 2008, the Cochrans filed a petition for judicial review in district court in Sedgwick County. In their petition, the Cochrans argued that the permits granted to the City did not sufficiently protect their senior water rights. The Cochrans requested the district court to stay or enjoin DWR's action under the permits pending the Court's final decision; set aside or modify DWR's action; remand the matter for further proceedings before the DWR with directions to protect the Cochrans' senior water rights; and provide other just and equitable relief.

The district court heard arguments limited to the issue of standing on January 29, 2009, and found that, under this court's decision in *Board of Sumner County Comm'rs v. Bremby*, 286 Kan. 745, 189 P.3d 494 (2008), the Cochrans had standing to seek review of the Chief Engineer's order granting the permits.

The case is before this court on interlocutory appeal of the district court's determination of the Cochrans' standing.

ANALYSIS

*Water Rights in Kansas*

Before addressing the standing question, a brief review of Kansas water law and the Kansas Water Appropriation Act (KWAA), K.S.A. 82a-701 *et seq.* is appropriate.

Since passing the KWAA in 1945, Kansas has followed "a permit system for acquiring water appropriation rights based upon 'first in time, first in right.' " *Hawley v. Kansas Dept. of Agriculture*, 281 Kan. 603, 614, 132 P.3d 870 (2006) (citing Peck and Owen, *Loss of Kansas Water Rights for Non-Use*, 43 Kan. L. Rev. 801, 805

[1995]). Water rights are considered real property. K.S.A. 2009 Supp. 82a-701(g). Further, "a water right does not constitute ownership of the water itself; it is only a usufruct, a right to use water." *Shipe v. Public Wholesale Water Supply Dist. No. 25*, 289 Kan. 160, Syl. ¶ 6, 210 P.3d 105 (2009); see K.S.A. 82a-707(a).

Prior to enactment of the KWAA, Kansas followed the riparian doctrine for surface water and the absolute ownership doctrine for groundwater. *Hawley*, 281 Kan. at 613-14. Under both of these doctrines, water rights were "generally not lost solely by failure to use the water." *Hawley*, 281 Kan. at 614 (citing 43 Kan. L. Rev. at 802).

Under the KWAA, Kansas now follows the appropriation doctrine. *Williams v. City of Wichita*, 190 Kan. 317, 333, 374 P.2d 578 (1962). "The appropriation doctrine is based upon the premise[] that all unused water belongs to all of the people of the state. The first person to divert water from any source and use it for beneficial purposes has prior right thereto. In other words, first in time, first in right." *F. Arthur Stone & Sons v. Gibson*, 230 Kan 224, 630 P.2d 1164 (1981). Under this doctrine, this court now approaches questions concerning water rights " 'upon the basis of the interest of the people of the state without losing sight of the beneficial use the individual is making or has the right to make of the water.' " *F. Arthur Stone & Sons*, 230 Kan. at 231 (quoting *State, ex rel. v. Knapp*, 167 Kan. 546, 555, 207 P.2d 440 [1949]).

*Issue on Appeal*

The sole question on appeal is whether the Cochrans have standing to seek review under the KWAA and/or the Kansas Act for Judicial Review and Civil Enforcement of Agency Actions, K.S.A. 77-601 *et seq.* (KJRA).

This court has "explained that if a person does not have standing to challenge an action or to request a particular type of relief, then 'there is no justiciable case or controversy' and the suit must be dismissed." *Bremby*, 286 Kan. at 750 (citing *Kansas Bar Ass'n v. Judges of the Third Judicial Dist.*, 270 Kan. 489, 490, 14 P.3d 1154 [2000]). "When a person who does not have standing to file suit nevertheless asks for relief, it is tantamount to a request for an

advisory opinion. [Citation omitted.] Advisory opinions are an executive, not a judicial, power." 286 Kan. at 750 (citing *State ex rel. Morrison v. Sebelius*, 285 Kan. 875, 885, 179 P.3d 366 [2008]).

*Standard of Review*

"Standing is a jurisdictional question whereby courts determine 'whether the plaintiff has alleged such a personal stake in the outcome of the controversy as to warrant invocation of jurisdiction and to justify exercise of the court's remedial powers on his or her behalf.' " *Bremby*, 286 Kan. at 750-51 (quoting *Moorhouse v. City of Wichita*, 259 Kan. 570, 574, 913 P.2d 172 [1996]). "Because standing implicated the court's jurisdiction to hear a case, the existence of standing is a question of law over which this court's scope of review is unlimited." 286 Kan. at 751 (citing *312 Education Ass'n v. U.S.D. No. 312*, 273 Kan. 875, 882, 47 P.3d 383 [2002]).

The district court's ruling was made before commencement of discovery; therefore, this court should "accept the facts alleged in the petition as true, along with any inferences that can be reasonably drawn therefrom. If those facts and inferences demonstrate that the appell[ee]s have standing to sue, the decision of the district court must be [affirmed]." *Bremby*, 286 Kan. at 751.

Additionally, the issue presented requires the court to interpret sections of the KWAA, K.S.A. 82a-701 *et seq.* and the KJRA, K.S.A. 77-601 *et seq.*

"When courts are called upon to interpret statutes, the fundamental rule governing our interpretation is that 'the intent of the legislature governs if that intent can be ascertained. The legislature is presumed to have expressed its intent through the language of the statutory scheme it enacted.' *State ex rel. Stovall v. Meneley*, 271 Kan. 355, 378, 22 P.3d 124 (2001). For this reason, when the language of a statute is plain and unambiguous, courts 'need not resort to statutory construction.' *In re K.M.H.*, 285 Kan. 53, 79, 169 P.3d 1025 (2007). Instead, '[w]hen the language is plain and unambiguous an appellate court is bound to implement the expressed intent.' *State v. Manbeck*, 277 Kan. 224, Syl. ¶ 3, 83 P.3d 190 (2004).

". . . Generally, courts should construe statutes to avoid unreasonable results and should presume that the legislature does not intend to enact useless or meaningless legislation. *Hawley v. Kansas Dept. of Agriculture*, 281 Kan. 603, 631, 132 P.3d 870 (2006). We ascertain the legislature's intent behind a particular statutory provision 'from a general consideration of the entire act. Effect must be given, if

possible, to the entire act and every part thereof. To this end, it is the duty of the court, as far as practicable, to reconcile the different provisions so as to make them consistent, harmonious, and sensible. [Citation omitted.]' *In re Marriage of Ross*, 245 Kan. 591, 594, 783 P.2d 331 (1989); see also *State ex rel. Morrison v. Oshman Sporting Goods Co. Kansas*, 275 Kan. 763, Syl. ¶ 2, 69 P.3d 1087 (2003). Thus, in cases that require statutory construction, 'courts are not permitted to consider only a certain isolated part or parts of an act but are required to consider and construe together all parts thereof *in pari materia.' Kansas Commission on Civil Rights v. Howard*, 218 Kan. 248, Syl. ¶ 2, 544, P.2d 791 (1975)." *Bremby*, 286 Kan. at 754-55.

Finally, this court no longer gives deference to an agency's interpretation of a statute and, therefore, has unlimited review. *Kansas Dept. of Revenue v. Powell*, 290 Kan. 564, 567, 232 P.3d 856 (2010).

*Standing under the KJRA and KWAA*

Both the KWAA and the KJRA contain provisions governing who has standing to seek review of the decisions of the Chief Engineer (in the case of the KWAA) or the agency (KJRA). See K.S.A. 2008 Supp. 82a-708b; K.S.A. 2010 Supp. 82a-711(c); K.S.A. 82a-716; K.S.A. 82a-717a; K.S.A. 77-611. Before determining whether the Cochrans have standing under traditional standards governing standing in this state, this court must consider whether the Cochrans meet the standing requirements of the KWAA and KJRA. See *Bremby*, 286 Kan. at 750.

This action involves a permit to appropriate water pursuant to the KWAA. The statute that confers standing for administrative review of the Chief Engineers' decisions under these circumstances is K.S.A. 2010 Supp. 82a-711(c) which provides:

"With regard to whether a proposed use will impair a use under an existing water right, impairment shall include the unreasonable raising or lowering of the static water level or the unreasonable increase or decrease of the streamflow or the unreasonable deterioration of the water quality at the water user's point of diversion beyond a reasonable economic limit. *Any person aggrieved by any order or decision by the chief engineer relating to that person's application* for a permit to appropriate water may petition for review thereof in accordance with the provisions of K.S.A. 2010 Supp. 82a-1901 and amendments thereto." (Emphasis added.)

The express language of K.S.A. 2010 Supp. 82a-711(c) clearly limits standing for administrative review of adverse water permit determinations by the Chief Engineer to the applicant. The Cochrans concede the statute so provides. Contrary to the arguments made by the DWR and the City, analysis of statutory standing does not end there.

The KJRA has a much more inclusive provision regarding standing. It is found in K.S.A. 77-611:

"The following persons having standing to obtain judicial review of final or non-final agency action:

"(a) A person to whom the agency action is specifically directed;

"(b) a *person who was a party to the agency proceedings that led to the agency action;*

"(c) if the challenged agency action is a rule and regulation, a person subject to that rule; or

"(d) a person eligible for standing under another provision of law." (Emphasis added.)

The KJRA defines "party to agency proceedings," as the term is used in K.S.A. 77-611(b), as "[a] person to whom the agency action is specifically directed" or "a person named as a party to any agency proceeding or allowed to intervene *or participate as a party in the proceeding.*" (Emphasis added.) K.S.A. 77-602(f)(2); see *Bremby*, 286 Kan. at 752.

The Cochrans have standing for judicial review under the KJRA if they participated as a party in the proceeding. In *Bremby*, this court considered this very question and determined that a "party" was a person who takes part in a transaction. 286 Kan. at 755. Further, the court found that "the legislature intended the term 'proceeding' as it is used in the KJRA to be read broadly to refer to *the process* by which an agency carries out its statutory duties," and the permit process KDHE undertook to consider whether to grant a landfill permit was a proceeding within the meaning of the KJRA. 286 Kan. at 756. This court held that an interested person's "submission of written comments during a public notice and comment period and all persons' comments made during a public hearing held by an agency both qualify as participation within the meaning of the KJRA's standing requirements." 286 Kan. at 758, 761.

The Cochrans meet the definition of "party" under K.S.A. 77-611 as interpreted in *Bremby*. The Cochrans own prior appropriation rights with points of diversion in the vicinity of the authorized points of diversion for the City's permits. The DWR received input from the Cochrans and their legal counsel during the consideration and processing of the City's applications for permits. Thus, the Cochrans participated in the process by which the Chief Engineer carried out his statutory duties. The process at issue was a permit process, just like the process in *Bremby*. While there is no evidence in the record that there was a public notice of the applications or a comment period, the record indicates that DWR received input from the Cochrans and their legal counsel and the Chief Engineer considered the Cochrans' concerns.

The legislature enacted the KJRA after the KWAA. The latter was passed in 1945, and the act was amended to include K.S.A. 82a-711(c) in 1957. The KJRA, on the other hand, was passed in 1984. The KWAA and its standing provisions on water appropriation applications had therefore been in place decades before passage of the KJRA. "[C]ourts presume the legislature acts with knowledge of existing statutory and case law when it enacts legislation." *Frick v. City of Salina*, 289 Kan. 1, 23, 208 P.3d 739 (2009) (citing *State ex rel. Board of Healing Arts v. Beyrle*, 269 Kan. 616, 629, 7 P.3d 1194 [2000]); see *State v. Bee*, 288 Kan. 733, 738, 207 P.3d 244 (2009); *Martin v. Kansas Dept. of Revenue*, 285 Kan. 625, 631-32, 176 P.3d 938 (2008).

The KJRA applies to all agencies and all proceedings for judicial review of agency actions not specifically exempted by statute. K.S.A. 77-603(a) provides "[t]his act applies to all agencies and all proceedings for judicial review and civil enforcement of agency actions not specifically exempted by statute from the provisions of this act." See *Lindenman v. Umscheid*, 255 Kan. 610, Syl. ¶ 1, 875 P.2d 964 (1994); *Heiland v. Dunnick*, 270 Kan. 663, Syl. ¶ 1, 19 P.3d 103 (2001); and *10th Street Medical v. State*, 42 Kan. App. 2d 249, 254, 210 P.3d 670 (2009), *rev. denied* (June 23, 2010).

We must presume the legislature enacted the KJRA with full knowledge of the provisions of the KWAA. Had the legislature intended exclusion of the DWR or the water appropriation process

under the KWAA from the KJRA, or any provision thereof including its standing provisions, it would have so provided. On the contrary, K.S.A. 2009 Supp. 82a-724 specifies the KJRA as the statutory scheme for judicial review under the KWAA. There is no provision for exclusion of the KJRA from application to the KWAA.

To summarize our analysis on the statutory requirements of standing, we hold K.S.A. 2010 Supp. 82a-711(c) confers standing on water appropriation applicants only and applies only to agency review of a determination of the Chief Engineer with respect to that application. The KJRA confers standing on a party to the proceeding as that term is defined in the act and interpreted in *Bremby* and applies to judicial review as contemplated under that act. The Cochrans participated sufficiently to be considered a party to the proceedings and thus have standing to seek judicial review of the agency determinations pursuant to the KJRA.

Both DWR and the City have argued that the standing provisions of the KWAA are more specific than the general provisions of the KJRA; therefore, the KWAA controls. While it is an accurate statement of the law that "the more specific statute must control over a more general statute," see *State v. Martinez*, 290 Kan. 992, 1001, 236 P.3d 481 (2010) (citing *In re K.M.H.*, 285 Kan. 53, 82, 169 P.3d 1025 [2007], *cert. denied sub nom. Hendrix v. Harrington*, 555 U.S. 937, 172 L. Ed. 2d 239, 129 S. Ct. 36 [2008]), that rule has no application in this context. The rule applies where a general statute is in conflict with a specific statute dealing with the same subject.

"It is a cardinal rule of law that statutes complete in themselves, relating to a specific thing, take precedence over general statutes or over other statutes which deal only incidentally with the same question, or which might be construed to relate to it. Where there is a conflict between a statute dealing generally with a subject, and another dealing specifically with a certain phase of it, the specific legislation controls in a proper case. [Citations omitted.]" *Chelsea Plaza Homes, Inc. v. Moore*, 226 Kan. 430, 432, 601 P.2d 1100 (1979).

Here there is no such conflict as the KWAA standing statute concerns administrative remedies and the KJRA concerns judicial review. The legislature clearly adopted more expansive criteria in determining who may have standing for the purposes of seeking

judicial review compared to standing to seek administrative review. There is no conflict between the two statutes; therefore, it is improper to use the more-specific-statute rule of construction. See, e.g., *In re Tax Exemption Application of Mental Health Ass'n of the Heartland*, 289 Kan. 1209, 1218, 221 P.3d 580 (2009).

The KJRA does require that one exhaust his or her administrative remedies, (see K.S.A. 77-612), but that statute provides:

"A person may file a petition for judicial review under this act only after exhausting all administrative remedies *available* within the agency whose action is being challenged and within any other agency authorized to exercise administrative review." (Emphasis added.)

This statute has been interpreted to provide that if one has no administrative remedies available there is no additional requirement of "exhaustion." *Beaver v. Chaffee*, 2 Kan. App. 2d 364, 369, 579 P.2d 1217 (1978), cited with approval, *In re Habeas Corpus Application of Pierpoint*, 271 Kan. 620, 624, 24 P.3d 128 (2001); see 2 Am. Jur. 2d, Administrative Law § 606. Thus, the Cochrans have satisfied the requirements of K.S.A. 77-612, and we find that, under the KJRA, they have standing to seek judicial review of the permits granted to the City.

*Traditional Standing*

It is important to emphasize that in addition to the statutory qualifications conferring standing, a party seeking judicial review—in fact, any party seeking to file an action in the courts of Kansas—must demonstrate he or she also meet the traditional requirements for standing. "A party must have a sufficient stake in the outcome of an otherwise justiciable controversy in order to obtain judicial resolution of that controversy." *Moorhouse v. City of Wichita*, 259 Kan. 570, 574, 913 P.2d 172 (citing *Harrison v. Long*, 241 Kan. 174, 176, 734 P.2d 1155 [1987]; *Joe Self Chevrolet, Inc. v. Board of Sedgwick County Comm'rs*, 247 Kan. 625, Syl. ¶ 1, 802 P.2d 1231 [1990]). To demonstrate standing in Kansas, the traditional test is twofold: "a person must demonstrate that he or she suffered a cognizable injury and that there is a causal connection between the injury and the challenged conduct." *Bremby*, 286 Kan. at 761

(citing *Moorhouse v. City of Wichita*, 259 Kan. 570, 574, 913 P.2d 172 [1996]).

In *Bremby*, the plaintiffs alleged that the landfill, if unsuitable, could leak, contaminating the soil, groundwater, and surface water. 286 Kan. at 763. The petition in *Bremby* stated that plaintiff's organization members would "suffer damage to their real property and water supply if the . . . landfill site [wa]s unsuitable under applicable legal requirements and if it leak[ed], causing contamination to the soil, groundwater and surface water." 286 Kan. at 763. This court found that it could be "inferred from the petition that [plaintiffs] will suffer imminent injury if the challenge to issuance of landfill permit is not permitted. The [plaintiffs] therefore have standing to sue." 286 Kan. at 763.

Just as in *Bremby*, the district court entered its ruling prior to the commencement of discovery; therefore, this court must accept the facts alleged by Cochrans to be true together with all reasonable inferences that can be drawn therefrom. See 286 Kan. at 751.

In their petition, the Cochrans claim that the permits do not sufficiently protect their senior water rights. Specifically, the Cochrans allege, as to Permit Nos. 45,296 and 45,297, paragraph 9 is vague and immeasurable, and the permit should have stated that the City would not be allowed to decrease the stream flow. As to Permit Nos. 45,298, 45,299, 45,300, and 45,301, the Cochrans complain that the City should be required to monitor water quality both above and below the competent clay unit; the water should be sampled daily when pumps are running and weekly when the pumps are not running; sampling and remedies should be extended to all Cochran domestic wells and all nondomestic water rights held by the Cochrans and any future owners of the property; 165 cubic feet per second is an inappropriate level by which to determine whether the bank storage well should be operated; and the permits do not specify any provisions or means to ensure that bank storage water is all that is withdrawn and no groundwater is withdrawn.

During the hearing on the Cochrans' petition for judicial review, the Cochrans argued additional facts about their potential injury or impairment. First, the Cochrans have no other source of water for their home and land other than their two points of diversion.

Further, they pointed out to the court that they spent between one and two million dollars building their home, anticipating it would remain rural, and, if they have no other water supply and no standing to challenge the grant of a permit to the city, they could not value their property accurately. This argument appears to stem from the concept that the City's subsequent appropriation of water will impair the Cochrans' prior water right to the extent that no one would purchase their home at a later time. Finally, the Cochrans also argue that there is no immediate response available to them if, at a later time, their supply of water is impaired. For these reasons, the Cochrans request that the court stay or enjoin the City's action under the permits; set aside or modify the permits; remand the matter for further proceedings before the DWR with directions to protect the Cochrans' senior water rights; and provide other just and equitable relief.

As in *Bremby*, the Cochrans allege a potential injury and damage "to their real property and water supply" if the appropriations by the City were "unsuitable under legal requirements." See 286 Kan. at 763. Given those facts and inferences, under *Bremby*, we find the Cochrans allege sufficient imminent injury to the value of their property and the levels of water on their property.

## CONCLUSION

The decision of the district court holding the Cochrans have standing under the KJRA to challenge the determinations of the Chief Engineer of the DWR is affirmed and the case is remanded to the district court for further proceedings within the parameters of that act.

Affirmed and remanded for further proceedings.

RICHARD M. SMITH, District Judge, assigned.