NOT DESIGNATED FOR PUBLICATION

No. 117,165

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

CITY OF DERBY,
*Appellant*,

v.

STATE OF KANSAS *ex rel*. NICK JORDAN, SECRETARY,
KANSAS DEPARTMENT OF REVENUE,
*Appellee*.

MEMORANDUM OPINION

Appeal from Shawnee District Court; TERESA L. WATSON, judge. Opinion filed August 3, 2018.
Reversed and remanded with directions.

*Trevor C. Wohlford* and *Michael Lennen*, of Morris, Laing, Evans, Brock & Kennedy, Chtd., of
Topeka, for appellant.

*Jay D. Befort*, of Legal Services Bureau, Kansas Department of Revenue, and *Derek Schmidt*,
attorney general, for appellee.

Before MCANANY, P.J., PIERRON, J., and WALKER, S.J.

PER CURIAM: The City of Derby sought judicial review of the action of the
Kansas Department of Revenue (KDR) in response to Derby's complaint about the
distribution of use tax proceeds that the KDR collected. The KDR responded by moving
to dismiss Derby's petition for lack of standing. The district court agreed and dismissed
Derby's petition. Derby appeals the district court's dismissal based on Derby's claimed
lack of standing. We find merit in Derby's argument and reverse and remand for further
proceedings based on our conclusion that Derby has standing under K.S.A. 77-611(b) and
under common law.

1

Derby is a city of the second class located in Sedgwick County. The KDR has the responsibility to collect and distribute taxes and to administer our state tax laws.

In 2002 the Legislature enacted K.S.A. 12-199, which provides for the imposition of a compensating use tax that applies to "every city or county imposing a retailers' sales tax." The use tax is "for the privilege of using or storing within a city or county any vehicle . . . purchased within this state but without the local retailers' sales taxing jurisdiction of such city or county." K.S.A. 2017 Supp. 12-199(a). The county treasurer has the duty to collect this use tax at the time the vehicle is registered. "All revenue received by any county treasurer from a countywide compensating use tax shall be apportioned among the county and each city located in such county in the same manner as provided in K.S.A. 12-192." K.S.A. 2017 Supp. 12-199(c). The KDR is charged with administering and enforcing the tax.

In 2003, Derby began imposing a 0.5% local retailers' sales tax. Since then, when a Derby resident purchases a motor vehicle outside of Derby, the Sedgwick County Treasurer collects the 0.5% use tax as provided for in K.S.A. 2017 Supp. 12-199 when the purchaser registers the vehicle.

In 2015, Derby learned that the KDR was disbursing one-third of the proceeds from the use tax to Derby and the balance to Sedgwick County. This apportionment was based on the KDR's interpretation of K.S.A. 2015 Supp. 12-199. Derby contacted the Sedgwick County Treasurer, Linda Kizzire, to correct what Derby believed was an improper apportionment of these use tax proceeds. Kizzire forwarded Derby's complaint to the KDR.

On October 27, 2015, Richard Cram, the KDR's director of policy and research, informed Kizzire that the KDR was correctly distributing the compensating use tax proceeds in accordance with K.S.A. 2015 Supp. 12-199. Derby notified the KDR that it

2

did not agree with this interpretation of K.S.A. 2015 Supp. 12-199 and requested a meeting to discuss the KDR's administration and allocation of use tax proceeds.

On January 19, 2016, Derby's attorney met with the KDR's attorney, Ted Smith. Derby presented documents on its interpretation of the statute and attempted to persuade the KDR of its interpretation, but the KDR rejected Derby's interpretation.

On January 28, 2016, after the meeting with the KDR, Derby requested the agency's opinion on its interpretation of the proper method of allocating the local use tax.

On February 11, 2016, in response to Derby's request, the KDR's Cram issued an opinion letter setting forth its interpretation of K.S.A. 2015 Supp. 12-199. Cram informed Derby that the letter was the KDR's final response and was not subject to the KDR's informal conference administrative appeal process.

On March 11, 2016, Derby filed its petition in the district court for review of the KDR's action. Derby asserted that it had standing to challenge the action under K.S.A. 77-611 because (1) it had exhausted all administrative remedies, (2) Derby was a "person" as defined in K.S.A. 77-602(h) and K.S.A. 77-607, (3) the KDR opinion was directed at it, (4) the KDR's interpretation of law and its actions directly affect Derby's rights, (5) Derby was a party to the agency proceedings, (6) the KDR opinion letter was a rule and regulation that Derby was subject to, and (7) the KDR opinion was a final agency action.

On May 18, 2016, the State moved under K.S.A. 2015 Supp. 60-212(b) to dismiss the petition for, among other things, lack of standing.

On December 15, 2016, the district court dismissed Derby's petition for lack of standing under K.S.A. 77-611(a), (b), (c), and (d).

3

The district court relied on *Dorsey v. Kansas Dept. of SRS*, No. 92,293, 2005 WL 81557 (Kan. App. 2005) (unpublished opinion). The court found that the KDR opinion was not "specifically directed" to Derby as required under K.S.A. 77-611(a) because it applied uniformly to all cities and was not specific to a single set of facts. See 2005 WL 81557, at *3. Further, there were no "proceedings" that led to an agency action as required by K.S.A. 77-611(b). Moreover, the agency action did not have the force and effect of law under K.S.A. 77-611(c) so as to give Derby standing. Finally, the court concluded that there was no standing under K.S.A. 77-611(d) because Derby failed to argue that it had standing under any other provision of the law. The district court made no findings relating to Derby's claim that it had standing under principles of common law.

Now, on appeal, Derby argues that it had standing under K.S.A. 77-611(a)-(c) and under the common law.

The Kansas Judicial Review Act (KJRA), K.S.A. 77-601 et seq., governs judicial review of an agency action. Under K.S.A. 2017 Supp. 77-621(c), the court shall grant relief from agency action if "(4) the agency has erroneously interpreted or applied the law . . . or (8) the agency action is otherwise unreasonable, arbitrary or capricious." Derby relies on these provision of K.S.A. 2017 Supp. 77-621(c). Derby has the burden to prove the invalidity of the KDR's action. K.S.A. 2017 Supp. 77-621(a)(1).

Standing is a component of subject matter jurisdiction. *State v. Ernesti*, 291 Kan. 54, 60, 239 P.3d 40 (2010). Whether standing exists is a question of law over which we have unlimited review. In considering the KDR's standing argument, we accept as true the allegations in Derby's petition and any reasonable inferences we can draw from the petition. See *Board of Sumner County Comm'rs v. Bremby*, 286 Kan. 745, 750-51, 189 P.3d 494 (2008).

4

A party seeking relief under the KJRA must have both common-law standing and statutory standing. *Sierra Club v. Moser*, 298 Kan. 22, 29-30, 310 P.3d 360 (2013). Common-law standing is described as follows:

> "Generally, to demonstrate common-law or traditional standing, a person suing individually must show a cognizable injury and establish a causal connection between the injury and the challenged conduct. To establish a cognizable injury, a party must establish a personal interest in a court's decision and that he or she personally suffers some actual or threatened injury as a result of the challenged conduct. [Citations omitted.]" 298 Kan. at 33.

Statutory standing is set forth in K.S.A. 77-611, which provides:

> "The following persons have standing to obtain judicial review of final or nonfinal agency action:
> "(a) A person to whom the agency action is specifically directed;
> "(b) a person who was a party to the agency proceedings that led to the agency action;
> "(c) if the challenged agency action is a rule and regulation, a person subject to that rule; or
> "(d) a person eligible for standing under another provision of law."

Derby argues that it has common-law standing and statutory standing under K.S.A. 77-611(a)-(c). In order to establish standing under the KJRA to challenge the KDR's action, Derby must satisfy at least one of the provisions of K.S.A. 77-611 plus show common-law standing.

*Derby Had Standing under K.S.A. 77-611(b)*

Derby argues that it had standing to challenge KDR's action under K.S.A. 77-611(b) because it was a party to agency proceedings which led to the decision letter.

5

K.S.A. 77-602(f) defines "party to agency proceedings" to include "a person . . . allowed to . . . participate as a party in the proceeding."

The word "proceeding" is not limited to hearings or adjudications, but rather is "to be read broadly to refer to *the process* by which an agency carries out its statutory duties." *Bremby*, 286 Kan. at 755-56.

Here, there is no dispute that issuing the opinion letter was an agency action. Under K.S.A. 2017 Supp. 12-199(b), the KDR has a duty to administer and enforce the compensating use tax and "to adopt such rules and regulations necessary for the efficient and effective administration, enforcement and collection thereof." Providing opinions on the agency's interpretation of K.S.A. 2017 Supp. 12-199 is part of administering the statute, so issuing this opinion letter was an agency proceeding as defined in *Bremby*.

But Derby also must have participated in the agency proceeding. In *Bremby*, the court held that an interested person's "submission of written comments during a public notice and comment period and all persons' comments made during a public hearing held by an agency both qualify as participation within the meaning of the KJRA's standing requirements." 286 Kan. at 758.

In *Cochran v. Kansas Dept. of Agriculture*, 291 Kan. 898, 249 P.3d 434 (2011), the Chief Engineer of the Division of Water Resources issued permits to the City of Wichita for the appropriation of water. The plaintiffs owned prior water appropriation rights. During the permitting process, they expressed concerns that their prior appropriation rights might be affected by the City's request. They sought a hearing regarding issuance of the permits, but the Chief Engineer claimed they had no standing in the matter. Our Supreme Court stated:

6

"The Cochrans met the definition of 'party' under K.S.A. 77-611 as interpreted in *Bremby*. The Cochrans owned prior appropriation rights with points of diversion in the vicinity of the authorized points of diversion for the City's permits. The DWR received input from the Cochrans and their legal counsel during the consideration and processing of the City's applications for permits. Thus, the Cochrans participated in the process by which the Chief Engineer carried out his statutory duties. The process at issue was a permit process, just like the process in *Bremby*. While there is no evidence in the record that there was a public notice of the applications or a comment period, the record indicates that DWR received input from the Cochrans and their legal counsel and the Chief Engineer considered the Cochrans' concerns." *Cochran*, 291 Kan. at 906.

In *Families Against Corporate Takeover v. Mitchell*, 268 Kan. 803, 1 P.3d 884 (2000), the plaintiff requested that the Kansas Department of Health and Environment revoke a permit for construction and operation of a 14,300-head hog farm. Members of the plaintiff organization claimed the adjacent hog farm diminished the value of their properties and polluted the air and water. The KDHE failed to respond, thereby denying the plaintiff's request under K.A.R. 28-16-62(g)(2). The plaintiff sought judicial review, but the district court held that it had no standing. On review, our Supreme Court determined that the plaintiff had participated in the agency proceeding when it requested a public hearing and provided commentary during the public hearing. 268 Kan. at 811.

Based on this line of cases, we conclude that Derby had standing. Here, Derby requested a private hearing with the KDR. In the private meeting, Derby presented its interpretation of K.S.A. 2015 Supp. 12-199 to the KDR in an attempt to influence the outcome of the agency proceeding. In doing so, Derby participated in the agency proceeding as the terms are defined by our Supreme Court, and Derby had standing under K.S.A. 77-611(b) to challenge KDR's action.

*Derby Had Standing under the Common Law*

The KDR challenges for the first time on appeal that Derby has standing under the common law. Because standing is a component of subject matter jurisdiction, we will consider this contention. See *Ernesti*, 291 Kan. at 60.

Common-law standing is described as follows:

> "Generally, to demonstrate common-law or traditional standing, a person suing individually must show a cognizable injury and establish a causal connection between the injury and the challenged conduct. To establish a cognizable injury, a party must establish a personal interest in a court's decision and that he or she personally suffers some actual or threatened injury as a result of the challenged conduct. [Citations omitted.]" *Sierra Club*, 298 Kan. at 33.

Here, we review de novo the KDR's motion to dismiss and, in doing so, accept as true for purposes of the motion Derby's allegations of fact in its petition. Derby has an interest in seeing that use tax revenues are collected and distributed in a manner consistent with our statutes. Derby alleges it has suffered a reduced distribution of tax revenue wrongfully caused by the KDR's interpretation and application of K.S.A. 2015 Supp. 12-199. Thus, Derby has alleged facts that give it common-law standing to challenge the KDR's method of distributing use tax proceeds on vehicles owned by Derby's residents.

Because Derby has shown that it had statutory and common-law standing, the district court should not have dismissed Derby's petition for judicial review for lack of standing.

Reversed and remanded for further proceedings.