NOT DESIGNATED FOR PUBLICATION

No. 123,972

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

CHRISTOPHER BOOKTER,
*Appellant*,

v.

WYATT A. KNISLEY, et al.,
*Defendants*,
and
COMMUNITY STATE BANK,
*Intervenor/Appellee*.

MEMORANDUM OPINION

Appeal from Montgomery District Court; JAMES R. FLEETWOOD, judges. Opinion filed March 4, 2022. Affirmed.

*W.J. Fitzpatrick*, of Fitzpatrick & Bass, of Independence, for appellant.

*M. Doug Bell*, of Hall Levy DeVore Bell Ott & Kritz, of Coffeyville, for intervenor/appellee.

Before BRUNS, P.J., MALONE, J., and RICHARD B. WALKER, S.J.

PER CURIAM: The district court awarded Christopher Bookter damages in a civil action against Jeromy Brooks, the owner of Chicks Pool Hall (Chicks), and a bartender, Wyatt A. Knisley. To satisfy the judgment, the district court ordered the pool hall seized and sold. Community State Bank (CSB) held a first mortgage on the pool hall and intervened as priority lienholder. Bookter filed a cross-claim against CSB alleging negligence because it did not enforce the insurance provision in the mortgage contract. The district court granted summary judgment to CSB on the cross-claim, finding that

1

Bookter was not an intended third-party beneficiary of the mortgage contract between CSB and Brooks. For the reasons stated below, we affirm the district court's judgment.

FACTS

Brooks owned and operated Chicks in Coffeyville, Kansas. CSB loaned Brooks $45,000 which he secured with a mortgage on Chicks filed on August 29, 2017. On January 16, 2019, Bookter patronized Chicks and got into a fight with Knisley, the bartender. The circumstances surrounding the fight are unimportant to this appeal. Bookter suffered a concussion, multiple contusions and lacerations, a closed fracture of the maxillary sinus, and a fractured orbital floor of the left eye. Bookter's injuries required hospitalization and reconstructive surgery.

Bookter sued Knisley for assault and battery and the bar owner, Brooks, under the theory of respondeat superior. Bookter filed a motion for summary judgment and the defendants did not respond. On May 8, 2020, the district court granted summary judgment to Bookter and awarded him more than $380,000 in economic and noneconomic damages.

On June 26, 2020, the district court ordered the Sheriff to seize and sell the pool hall to satisfy the judgment. CSB, as priority lienholder, moved to intervene. Bookter filed a cross-claim against CSB alleging negligence for not mandating that Brooks renew or secure liability insurance as required by the mortgage. Bookter asserted that he was entitled to recovery as a "third party creditor beneficiary" of the mortgage contract.

CSB and Bookter both filed motions for summary judgment. On May 14, 2021, the district court granted CSB's motion for summary judgment and adopted in part the parties' uncontroverted statement of facts:

"2. CSB entered into a mortgage on August 28, 2017, with defendant Brooks and Marilyn Brooks, his wife, for the amount of $45,000.00. The mortgage was recorded on August 29, 2017, with the Montgomery County Register of Deeds.

"3. The mortgage dated August 28, 2017 contains the following language: 'PROPERTY DAMAGE INSURANCE. The following provisions relating to insuring the Property are a part of this mortgage: Maintenance of Insurance. [Brooks] shall procure and maintain policies of fire insurance with standard extended coverage endorsements on a replacement basis for the full insurable value covering all improvements on the Real Property in an amount sufficient to avoid application of any coinsurance clause, and with a standard mortgage clause in favor of [CSB]. [Brooks] shall also procure and maintain comprehensive general liability insurance in such coverage amounts as [CSB] may request with [CSB] being named as additional insureds in such liability insurance policies. Additionally, [Brooks] shall maintain such other insurance, including but not limited to hazard, business interruption and boiler insurance as [CSB] may require. Policies shall be written by such insurance companies and in such form as may be reasonably acceptable to [CSB]. [Brooks] shall deliver to [CSB] certificates of coverage from each insurer containing a stipulation that coverage will not be cancelled or diminished without a minimum of ten (10) days' prior written notice to [CSB] and not containing any disclaimer of the insurer's liability for failure to give such notice. Each insurance policy also shall include an endorsement providing that coverage in favor of [CSB] will not be impaired in any way by any act, omission or default of [Brooks] or any other person. . . .

"4. Also on August 28, 2017, defendant Brooks signed for CSB an agreement to provide insurance. The agreement to provide insurance states:

'[BROOKS] ACKNOWLEDGES THAT IF [CSB] SO PURCHASES ANY SUCH INSURANCE, THE INSURANCE WILL PROVIDE LIMITED PROTECTION AGAINST PHYSICAL DAMAGE TO THE COLLATERAL, UP TO AN AMOUNT EQUAL TO THE LESSER OF (1) THE UNPAID BALANCE OF THE DEBT, EXCLUDING ANY UNEARNED FINANCE CHARGES, OR (2) THE VALUE OF THE

3

COLLATERAL; HOWEVER, [Brooks'] EQUITY IN THE COLLATERAL MAY NOT BE INSURED. IN ADDITION, THE INSURANCE MAY NOT PROVIDE ANY PUBLIC LIABILITY OR PORPERTY DAMAGE INDEMNIFICATION AND MAY NOT MEET THE REQUIREMETS OF ANY FINANICAL RESPONSIBILITY LAWS.'"

In granting summary judgment for CSB, the district court found that Bookter was not an expressly intended third-party beneficiary to the mortgage agreement. The district court found that Bookter may have been an incidental beneficiary of any agreement to maintain insurance, but as an incidental beneficiary Bookter had no right to recovery under Kansas law. Bookter timely appealed the district court's judgment.

ANALYSIS

Bookter argues that he is a third-party beneficiary of the mortgage contract between CSB and Brooks because as a creditor, he would have benefited had CSB enforced the liability provision in the contract and required Brooks to carry liability insurance. Bookter argues that CSB violated the terms of the mortgage agreement because it did not exercise its authority to buy adequate insurance on Brooks' behalf.

CSB argues that Bookter lacks standing and is not a third-party beneficiary because the contracting parties did not intend to benefit a third party. CSB argues that the insurance provision at issue is standard language found in mortgages and intended to protect CSB's interest in the property and the financial security of the borrower.

"Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, admissions on file, and supporting affidavits show that no genuine issue exists as to any material fact and the moving party is entitled to judgment as a matter of law. The district court must resolve all facts and reasonable inferences drawn from the evidence in favor of the party against whom the ruling [is] sought. When opposing

4

summary judgment, a party must produce evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issue in the case. Appellate courts apply the same rules and, where they find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment is inappropriate. Appellate review of the legal effect of undisputed facts is de novo." *GFTLenexa, LLC v. City of Lenexa*, 310 Kan. 976, 981-82, 453 P.3d 304 (2019).

The district court granted summary judgment to CSB, finding Bookter was not a third-party beneficiary to the contract and thus lacked standing. Parties in a judicial action must have standing as part of the Kansas case-or-controversy requirement imposed by the judicial power clause of Article 3, § 1 of the Kansas Constitution. *State ex rel. Morrison v. Sebelius*, 285 Kan. 875, 895-96, 179 P.3d 366 (2008). Standing is a jurisdictional question which determines whether a litigant has a right to have a court determine the merits of the issues presented. *Cochran v. Kansas Dept. of Agriculture*, 291 Kan. 898, 903, 249 P.3d 434 (2011). The person asserting the claim—here, Bookter—has the burden of establishing the standing requirements. *Baker v. Hayden*, 313 Kan. 667, 673, 490 P.3d 1164 (2021). Whether a party has established standing to bring an action before a Kansas court is a question of law over which appellate courts have unlimited review. *In re Care & Treatment of Emerson*, 306 Kan. 30, 34, 392 P.3d 82 (2017).

A party not privy to a contract has standing to sue as a third-party beneficiary if he or she establishes that the contract was made for his or her benefit, though not necessarily exclusively, and the parties intended that he or she benefit as a third-party beneficiary. *Cornwell v. Jespersen*, 238 Kan. 110, Syl. ¶ 2, 708 P.2d 515 (1985). Caselaw has established that there are two types of third-party beneficiaries: (1) an intended beneficiary and (2) an incidental beneficiary. Only an intended beneficiary has standing to sue for damages resulting from a breach of the contract. *State ex rel. Stovall v. Reliance Ins. Co.*, 278 Kan. 777, 793, 107 P.3d 1219 (2005). An intended beneficiary is one that the contracting parties intended the contract to benefit. In contrast, an incidental

beneficiary is a beneficiary that happens to benefit from the performance of the contract but is not the intended object of the contracting parties and "the benefits to him are merely incidental to the performance of the promise." *Cornwell*, 238 Kan. at 115.

Parties are presumed to contract for themselves, and their intent that a third person receive a direct benefit must be clearly expressed in the contract. *Noller v. General Motors Corp.*, 244 Kan. 612, 617, 772 P.2d 271 (1989); see *Stovall*, 278 Kan. at 795. Mere knowledge by the contracting parties that a third party could benefit from the contract does not imply the contracting parties' intent to benefit the third party. *Stovall*, 278 Kan. at 795; *Noller*, 244 Kan. at 617.

Bookter asserts the district court erred in granting summary judgment because he was a third-party beneficiary. In support he relies on our Supreme Court's decision in *Brown v. Wichita State University*, 217 Kan. 279, 540 P.2d 66 (1975). In *Brown*, an airplane carrying football players, faculty, and others crashed en route to a football game. Survivors and personal representatives of those killed in the crash sued as third-party beneficiaries because the university did not secure passenger liability insurance as required in its contract with Golden Eagle Aviation, Inc. and federal aviation regulations. All parties agreed that the plaintiffs were third-party beneficiaries of the contract between Golden Eagle Aviation and its *customer*. But Wichita State contended that it was not Golden Aviation's customer in fact or in law, the contract was not valid because they did not have authority to sign it, nor did they ratify the contract. In its decision, the *Brown* court addressed agency, valid contract creation, and government immunity.

Bookter argues that *Brown* is instructive because it involves liability insurance, same as the mortgage contract between Brooks and CSB. CSB argues that it is not useful because in *Brown*, the liability insurance was required by law, whereas here the insurance provision in the mortgage was contractual only. Both Bookter and CSB miss the point. *Brown* does rely on the third-party beneficiary doctrine to decide the case but does not

6

address the question at issue here—whether Bookter, a bar patron, was a third-party beneficiary of a mortgage agreement between the bank and the pool hall. In *Brown*, all parties conceded that the passengers were third-party beneficiaries of the contract between the aircraft lessor and lessee so there was never a question before the court about whether passenger insurance was meant to benefit passengers or their survivors.

Bookter also mentions *Keith v. Schiefen-Stockham Insurance Agency, Inc.*, 209 Kan. 537, 498 P.2d 265 (1972), as support for his argument. In *Keith*, two widows sued an insurance agency for not procuring workers compensation insurance as bought by the deceased employees' employer. Here, again, the Kansas Supreme Court noted that a third party may enforce a contract so long as the contract was intended to benefit him or her. 209 Kan. at 544-45. The *Keith* court said that employees and their dependents are intended beneficiaries of workers compensation insurance. 209 Kan. at 545.

Bookter tries to argue that the general liability insurance was meant to cover assault and battery, which he claims is the "primary liability risk associated with the business activity of the pool hall." Bookter says that the risk of personal injury by assault and battery was known or should have been known by the loan officers and that is why the bank required the liability coverage. But *Brown* and *Keith* do not bridge the gap here. In both these cases the claimants were found to be intended third-party beneficiaries of specific kinds of insurance that benefited specific classes of people—passengers and employees; and not general insurance provided for in a mortgage contract.

Bookter next inexplicably cites a Texas Court of Appeals case, *Debes v. General Star Indemnity Co.*, No. 09-12-00527-CV, 2014 WL 3384679 (Tex. App. 2014) (unpublished opinion), to support this proposition. In *Debes*, a landlord sued a tenant's property insurer for breach of contract, alleging the insurer failed to pay him under the policy for his property losses caused by a fire on the leased property. The Texas Court of Appeals held, among other things, that the landlord was not a third-party beneficiary and

7

lacked standing to sue. *Debes*, 2014 WL 3384679, at *7. In deciding the case, the *Debes* court distinguished the facts from *P.G. Bell Co. v. U.S. Fid. & Guar. Co.*, 853 S.W.2d 187 (Tex. App. 1993), where it held that a contractor was a third-party beneficiary and had standing to assert a breach of contract cause of action against the insurer up to the policy limits when it obtained default judgment against a subcontractor. *Debes*, 2014 WL 3384679, at *10. The court explained that in *P.G. Bell* the insurance policy was a third-party liability policy. This is the quote Bookter relies on:

> "The intent of the parties to a third-party liability contract is to indemnify, and if the third-party obtains a judgment, the policy confers a direct benefit to a third-party claimant injured by the insured. As such, a third-party claimant who has obtained a judgment against the insured for a covered loss under the third-party liability policy has been held to be a third-party beneficiary to the liability policy." *Debes*, 2014 WL 3384679, at *10.

The *Debes* court explained that unlike the policy at issue in *P.G. Bell*, the insurance policy in *Debes* was a first-party property coverage policy intended to protect against direct losses incurred by the insured, such as injury to the insured or damage to the property. *Debes*, 2014 WL 3384679, at *10.

It is unclear how either of these cases supports Bookter's position that he was a beneficiary to the mortgage. First, Texas state law carries no weight in Kansas. Second, both *Debes* and *P.G. Bell* are distinguishable from Bookter's case because they involve claimants trying to collect from insurers on existing insurance policies while Bookter is trying to enforce a bank's mortgage agreement between a bank and a pool hall.

To have standing as a third-party beneficiary, Bookter must show that the mortgage contract was expressly intended to benefit him, or others in the same class as him. See *Stovall*, 278 Kan. at 793; *Noller*, 244 Kan. at 617. "Before the issue is reached of whether a third party may directly enforce a contract from which he would benefit, the third party must show the existence of some provision in the contract that operates to his

8

benefit." *Hartford Fire Ins. Co. v. Western Fire Ins. Co.*, 226 Kan. 197, 210, 597 P.2d 622 (1979). The third party need not be personally named but must be identifiable as a benefited person or part of a class of people meant to be benefited. 226 Kan. at 210.

On page three of the standard, signed mortgage is the property damage insurance clause at issue. Within that clause, the borrower agrees to purchase fire insurance for the full insurable value of the property. The borrower also agrees to procure and maintain comprehensive general liability insurance in such coverage amounts as the lender "may request." Additionally, the borrower shall maintain such other insurance, including, but not limited to, hazard, business interruption, and boiler insurance as the lender "may require." If the borrower fails to carry insurance, the bank, at its option, may consider this failure an "Event of Default" and exercise its rights and remedies on default.

In another agreement signed by Brooks, the "Agreement to Provide Insurance," it stated that Brooks would acquire minimum insurance coverage for the loan collateral including all inventory, equipment, and fixtures. The agreement provided that if Brooks failed to maintain adequate insurance coverage, then CSB could purchase coverage up to the balance of the loan. If CSB bought insurance on Brooks' behalf, it would "Provide Limited Protection Against Physical Damage To The Collateral" and no protection for Brooks' equity in the property. In the deposition of Jeffrey Stewart, president of CSB, he explained that the purpose of the insurance requirement was to "help prevent any inability for the borrower to make payments on [the] loan should they become financially unable to" and it was not intended to benefit any party other than the lender.

Based on these documents, Brooks secured insurance coverage on September 1, 2017, with United Specialty Insurance Company and provided CSB with a copy of the policy. The policy contained an exclusion for assault and battery and lapsed after a year. While it is standard practice for lenders to require borrowers to maintain insurance, there is no law requiring it. The requirement is solely contractual and up to CSB to enforce.

CSB did not exercise its right under the agreement to purchase insurance on Brooks' behalf when the policy lapsed. As a result, there was no liability policy in effect when Bookter sustained his injuries at Chicks. Even if a policy had been in effect, the coverage limit would have been $45,000, and it is questionable whether the policy would have provided coverage for the assault and battery Bookter alleged Knisley committed.

The undisputed evidence before the district court showed that the intent of the insurance provision in the mortgage contract was solely for the benefit of CSB. This intent was also expressed in the written agreement to provide insurance that was signed in addition to the mortgage agreement. Based on the undisputed evidence, Bookter was not an expressly intended third-party beneficiary of the insurance provision in the mortgage contract. At best, Bookter may have been an incidental beneficiary of the mortgage contract to the extent that it required liability insurance, but an incidental beneficiary is not entitled to recovery under Kansas law. *Noller*, 244 Kan. at 618; *Cornwell*, 238 Kan. at 115. Thus, the district court did not err in granting summary judgment to CSB.

Finally, Bookter suggests in his brief that the separate agreement to provide insurance may have been forged because it was only signed by Brooks and other prior co-owners of Chicks, and not CSB. The district court rejected Bookter's "unsupported allegations of forgery," and we agree with that finding. More importantly, the result of this case would be the same based on the language of the mortgage contract, even if the separate agreement to provide insurance were not part of the record.

Affirmed.