NOT DESIGNATED FOR PUBLICATION

No. 117,101

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

MARILYN E. BATMAN,
Trustee of the BATMAN REVOCABLE TRUST NO. 1,
*Appellee/Cross-appellee*,

v.

KENT A. DEUTSCH, d/b/a DEUTSCH OIL COMPANY,
*Appellee/Cross-appellant*,

v.

ROBRO ROYALTY PARTNERS, LTD., a Texas Limited Partnership, and BITTER END
ROYALTIES, LP,
*Appellants/Cross-appellees*.

MEMORANDUM OPINION

Appeal from Stafford District Court; RON SVATY, judge. Opinion filed August 24, 2018.
Affirmed.

*Trevor C. Wohlford* and *Will B. Wohlford*, of Morris, Laing, Evans, Brock & Kennedy, Chtd., of
Topeka, for appellants/cross-appellees.

*Kevin M. McMaster*, of McMaster & McMaster LLC, of Wichita, for appellee/cross-appellant
Kent Deutsch, d/b/a Deutsch Oil Company.

*Mark A. Rondeau*, of Watkins Calcara, Chtd, of Great Bend, for appellee/cross-appellee
Marilyn E. Batman.

Before LEBEN, P.J., STANDRIDGE, J., and RYAN W. ROSAUER, District Judge, assigned.

1

PER CURIAM:  In 2003, Kent A. Deutsch, d/b/a Deutsch Oil Company (Deutsch), acquired an oil and gas lease to an 80-acre tract of real property in Stafford County, Kansas. Oliver and Marilyn Batman owned the surface rights to the property, but the mineral rights were split between the Batmans (and later, their trust) and the original owner of the property, who had retained mineral rights to a 10-acre tract of land surrounding an oil well. Deutsch sold the production from that well to a third-party purchaser, who then paid out royalties from the well to the owner. In 2012, Deutsch drilled a second well on the property. The mineral rights to this second well were owned by the Batmans' trust. Unaware that title to the minerals from the first well and the second well were held by two different owners, Deutsch commingled production from both wells and sold it to the purchaser, who paid out royalties to the current owner of the mineral rights in the 10-acre tract, Robro Royalty Partners, Ltd. (Robro) and Bitter End Royalties, LP (Bitter End).

Marilyn, as Trustee of the Batman Revocable Trust No. 1, filed claims for breach of contract and conversion against Deutsch. Deutsch filed a third-party petition impleading Robro and Bitter End under the equitable theory of unjust enrichment, and the Trust later amended its petition to include cross-claims for conversion and unjust enrichment against Robro and Bitter End. Following a bench trial, the district court entered judgment in favor of the Trust against Deutsch for breach of contract and against Robro and Bitter End for unjust enrichment. The court entered judgment against Deutsch in the amount of $157,099.10, with Robro and Bitter End, under theories of constructive trust and joint and several liability, liable for $25,037.02 and $113,111.35, respectively.

On appeal, Robro and Bitter End raise several arguments challenging the validity of Deutsch's third-party petition, the district court's finding of unjust enrichment, and the district court's award of damages. Deutsch cross-appeals, arguing primarily that the Batmans' failure to comply with the "change in ownership" provision in the oil and gas

2

lease constitutes an absolute defense to the Trust's breach of contract claim and that the district court erred in admitting alleged hearsay testimony into evidence.

FACTS

On October 1, 1983, Helen Morrison conveyed to Ralph Stalcup an 80-acre tract of real property located in Stafford County. This property was subject to a 1967 oil and gas lease (the Morrison Lease) entitling the lessor to a one-eighth royalty. The original lessor had drilled an oil well on the property in 1970. In the general warranty deed conveying the property, Morrison reserved mineral rights to a 10-acre tract surrounding the oil well (the Morrison A tract).

On October 27, 1983, Stalcup conveyed the property to the Batmans, subject to "oil and gas leases and mineral reservation of record." Accordingly, the Batmans owned the surface rights of the entire 80-acre tract and mineral rights to the 70 remaining acres not reserved by Morrison (the Morrison B tract). In 1989, the Batmans conveyed their ownership of the property to themselves as trustees of the Batman Revocable Trust No. 1 (the Trust). The Trust's ownership of this property continued during all times relevant to this appeal.

Deutsch acquired the Morrison Lease in 2003. Deutsch's responsibility under the lease was to pull oil from the property and deliver royalties to the proper owners. At the time Deutsch acquired the lease, Morrison was the owner of the mineral rights to the Morrison A tract and the Trust was the owner of the mineral rights to the Morrison B tract. In 2005, Larry and Helen Morrison conveyed the mineral interest in the Morrison A tract to Eastland Royalty Partners (Eastland). In 2008, Eastland conveyed 28% of its interest to Robro and 72% of its interest to Bitter End. In 2009, Robro conveyed 43.075% of its interest to Vendetta Royalty Partners, Ltd. (Vendetta).

In 2008, Deutsch entered into a crude oil purchase agreement with Sunoco Partners Marketing & Terminals L.P. (Sunoco) to sell the oil production from the Morrison A well. Under the terms of the agreement, Sunoco purchased the production and paid out royalties from the Morrison A well in accordance with division orders that directed payments to the owners. In the agreement, Deutsch warranted and guaranteed free and clear title to the oil sold and stated that Deutsch would hold Sunoco "harmless from and against any and all cost, damage and expense suffered and incurred by reason of any failure of the title so warranted or any inaccuracy in the representation of [Deutsch]'s right and authority to sell said crude oil made herein." Likewise, the division order covering the Morrison A well provided that the owners of the mineral rights agreed to indemnify and hold Sunoco harmless "'from all liability resulting from payments made to the owner in accordance with such division of interest, including but not limited to attorney's fees or judgements in connection with any suit affecting the owner's interest to which Sunoco Mktg. is made a party.'"

In late 2012, Deutsch drilled a well on the Morrison B tract. The well, referred to as the Morrison B well, began producing oil in January 2013 and continued to do so until it was shut down sometime in March or April 2014. During this time, Deutsch commingled production from that well with production from the Morrison A well, unaware that title to the minerals was split between the Morrison A and B tracts. As a result, Sunoco purchased the production and paid out royalties from both the Morrison A and B wells to Robro, Bitter End, and Vendetta.

In early 2014, Deutsch made plans to drill a second well on the Morrison B tract, the Batman-Morrison No. 1 well. In doing so, Deutsch obtained a title opinion on the property. According to Deutsch, it was only after receiving this title opinion that Deutsch learned the mineral interests in the Morrison Lease tract were split and that the Trust was entitled to all of the royalties from the Morrison B well. Deutsch contacted the Batman family to inform them of the error and promised to recoup the royalties to which they

4

were entitled. Deutsch then sent letters to Robro, Bitter End, and Vendetta explaining that they had been mistakenly paid royalties for production from the Morrison B well, which was owned by the Trust, from January 2013 through March 2014. Deutsch enclosed a spreadsheet with each of the letters he sent that identified allocation of production and income from the Morrison A and B wells and set forth the amount overpaid to each company. Based on these spreadsheets, Deutsch requested reimbursement in the following amounts: $26,249.71 from Robro, $118,419.74 from Bitter End, and $19,802.41 from Vendetta.

After Deutsch's attempts to recoup the royalty payments were unsuccessful and after Vendetta entered receivership in Texas, Deutsch filed suit against Robro and Bitter End in Stafford County, alleging that Robro and Bitter End were unjustly enriched because the royalties rightly belonged to the Trust. Robro and Bitter End removed the case to federal court and moved to dismiss the action for failure to state a claim. While that case was pending in federal court, Marilyn, as Trustee of the Trust, filed a breach of contract action against Deutsch in Stafford County, requesting reimbursement of the royalty payments in the amount of $157,099.10, as well as prejudgment interest. Deutsch timely answered and filed a third-party petition impleading Robro and Bitter End under the equitable theory of unjust enrichment. The federal court subsequently stayed Deutsch's case pending resolution of the case in Stafford County.

The Trust later amended its petition to include claims of conversion and negligence against Deutsch and cross-claims for conversion and unjust enrichment against Robro and Bitter End. Robro and Bitter End moved for dismissal, while the Trust and Deutsch each filed competing motions for summary judgment. The district court denied each of these motions. Before trial, the Trust abandoned its negligence claim against Deutsch. In addition, the Trust and Deutsch stipulated that the Trust should have received $157,099.10 in royalty payments from the Morrison B well. The case proceeded to a bench trial on the Trust's breach of contract and conversion claims against Deutsch,

5

the Trust's cross-claims for conversion and unjust enrichment against Robro and Bitter End, and Deutsch's unjust enrichment claim against Robro and Bitter End.

After hearing testimony and receiving evidence, the district court entered judgment in favor of the Trust against Deutsch for breach of contract and against Robro and Bitter End for unjust enrichment. The court entered judgment against Deutsch in the amount of $157,099.10, with Robro and Bitter End under theories of constructive trust and joint and several liability, liable for $25,037.02 and $113,111.35, respectively. Robro and Bitter End timely appeal from the district court's judgment. Deutsch cross-appeals.

ANALYSIS

Consistent with the district court's journal entry, we will first address Deutsch's arguments on cross-appeal. Deutsch argues the district court erred by: (1) denying his motion for summary judgment, (2) denying his motion for judgment as a matter of law following the close of evidence at trial, (3) entering judgment in favor of the Trust, and (4) admitting alleged hearsay testimony into evidence.

Next, we will address the following claims made by Robro and Bitter End on appeal, but in a slightly different order from their brief: (1) The district court erred in allowing Deutsch to proceed on a third-party claim, (2) the district court erred in entering judgment against them for unjust enrichment, and (3) the district court's damage award was not supported by substantial competent evidence.

Finally, we briefly will address the Trust's claim that the district court's award should have included prejudgment interest.

6

The case was tried to the district court, sitting without a jury, so the parties' factual disputes were resolved by the district court. On appeal, we look to see whether the district court's factual findings are supported by substantial competent evidence. *Schoenholz v. Hinzman*, 295 Kan. 786, 792, 289 P.3d 1155 (2012). Evidence is substantial if a reasonable person could accept it as sufficient to support a conclusion. In determining whether substantial competent evidence supports the district court's findings, appellate courts disregard any conflicting evidence or other inferences that might be drawn from the evidence. After we review the district court's factual findings, we independently review its legal conclusions. *Gannon v. State*, 298 Kan. 1107, 1175-76, 319 P.3d 1196 (2014).

1. *Deutch's cross-appeal*

Although Deutsch raises four separate arguments on appeal, we will combine the first three arguments—whether the district court erred in denying Deutsch's motion for summary judgment, in denying his motion for judgment as a matter of law, and in entering judgment in favor of the Trust—into one issue because they are all premised on the same legal argument. Specifically, Deutsch asserts that the Batmans' and/or the Trust's failure to comply with the "change in ownership" provision in the Morrison Lease is an absolute defense to the Trust's breach of contract claim.

Deutsch moved for summary judgment on all three of the Trust's original claims— breach of contract, conversion, and negligence. On appeal, Deutsch alleges that the district court erred in denying his motion with respect to all three claims. But the Trust abandoned its negligence claim prior to trial, and the district court did not find Deutsch liable for conversion, so the court's summary judgment rulings on these issues are moot. Because the district court ultimately resolved the breach of contract claim after a full trial

on the merits, the district court's decision to deny summary judgment on that issue is now moot.

It is also unnecessary to separately review Deutsch's claim that the district court erred in denying his motion for judgment as a matter of law mid-trial because the court denied this motion after the close of all the evidence as well. And, although Deutsch contends that he was entitled to judgment as a matter of law on both the breach of contract claim and the conversion claim, the district court did not find Deutsch liable for conversion. As a result, the only remaining issue is whether the district court erred in entering judgment in favor of the Trust for breach of contract at the close of all evidence. We then separately address Deutsch's claim that the district court erred in admitting alleged hearsay testimony into evidence.

a. *Breach of contract*

The elements of a breach of contract claim in Kansas are: "(1) the existence of a contract between the parties; (2) sufficient consideration to support the contract; (3) the plaintiff's performance or willingness to perform in compliance with the contract; (4) the defendant's breach of the contract; and (5) damages to the plaintiff caused by the breach." *Stechschulte v. Jennings*, 297 Kan. 2, 23, 298 P.3d 1083 (2013).

Deutsch does not challenge the evidence relating to a specific element of breach of contract. Rather, Deutsch relies on the change in ownership provision in the Morrison Lease to argue that the Batmans' failure to provide him with notice of their ownership of the Morrison B mineral rights absolves him of any liability under the lease. The change in ownership provision in the Morrison Lease provides, in relevant part:

> "If the estate of either party hereto is transferred . . . or if the rights hereunder of
> either party hereto are vested by descent or devise, the covenants hereof shall extend to

8

and be binding on the heirs, devises, executors, administrators, successors, or assigns, but no change in the ownership of said land or of any right hereunder shall be binding on the lessee until after lessee has been furnished with the original or a certified copy thereof of any transfer by lessor."

In entering judgment in favor of the Trust, the district court rejected Deutsch's reliance on the change in ownership provision, reasoning that because Sunoco, not Deutsch, was the payor of royalties due under the lease, Deutsch could not invoke the change in ownership provision. The court also concluded that Deutsch had failed in its obligation to establish proper title. On appeal, Deutsch argues that the district court's ruling was erroneous because it improperly limited application of the change in ownership provision to a payor and because it imposed a nonexistent duty on him to check title before royalty payments were made.

"'The change of ownership clause is almost invariably present in the oil and gas lease forms in common use, and such clause usually provides that no change of ownership of the right to receive royalty shall be binding upon the lessee until after a prescribed period of time after [the lessee] has received notice of such change of ownership in the manner also prescribed by the clause. Such clause is designed to permit the lessee to make payments provided for in the lease without being exposed to the risk of being required to pay royalty to a grantee of the lessor after the royalty has been paid in accordance with the former ownership. Thus, *although a new owner is entitled to receive royalties as against* [*the*] *grantor*, the lessee is not liable to the new owner for the payment of royalty until [having] been provided with the notice or evidence of change of ownership prescribed by the change of ownership clause.'" *Brubaker v. Branine*, 237 Kan. 488, 493, 701 P.2d 929 (1985) (quoting 3 Kuntz, Law of Oil and Gas § 45.3 [1967]).

But the change in ownership provision of the lease does not provide Deutsch with a defense to the Trust's breach of contract claim because it is inapplicable under the facts presented here. Although Deutsch claims the Batmans' failure to provide him with notice

of their ownership of the Morrison B mineral rights absolves him of any liability under the lease, the record reflects that there was no change in ownership with respect to the Morrison B tract mineral rights after Deutsch acquired the lease in 2003. The Batmans acquired their mineral interest in the Morrison B tract in 1983 and conveyed their interest to the Trust in 1989. The Trust continued to hold this interest during all times relevant to this appeal, including when Deutsch acquired the lease in 2003 and when the Morrison B well was producing oil in 2013 and 2014. Deutsch's claim that a lessee should be absolved of liability under a lease based on a lack of notice of change in ownership is without legal merit when, like here, *the ownership at issue was already in place at the time the lessee acquired rights under the lease*. Although for reasons different than those relied on by the district court, we agree with the district court's finding that the change in ownership provision does not provide Deutsch with a valid defense to the Trust's breach of contract claim. See *Gannon v. State*, 302 Kan. 739, 744, 357 P.3d 873 (2015) (if district court reaches correct result, its decision will be upheld even though it relied upon wrong ground or assigned erroneous reasons for its decision).

b. *Hearsay*

During Deutsch's testimony, the Trust's counsel elicited testimony about a conversation he had with Oliver in January or February 2013. Counsel asked Deutsch if Oliver had represented that he owned the minerals under the Morrison B tract, and Deutsch's counsel objected based on hearsay. The district court overruled the objection, and Deutsch stated that Oliver told him that he "might have interest in that lease." Deutsch further testified that he advised Oliver to give him some sort of documentation to verify his rights as soon as possible, but Deutsch never received any such documentation. Deutsch argues the district court erred in allowing this testimony into evidence and in relying upon it to find that, as a result of this conversation, Deutsch had a duty to establish proper title to the Morrison B tract mineral rights.

10

K.S.A. 2017 Supp. 60-460 defines hearsay as a "statement which is made other than by a witness while testifying at the hearing, offered to prove the truth of the matter stated." Hearsay is inadmissible, subject to certain exceptions. K.S.A. 2017 Supp. 60-460. An appellate court reviews the district court's admission or exclusion of alleged hearsay statements for an abuse of discretion. See *State v. Seacat*, 303 Kan. 622, 634, 366 P.3d 208 (2016). A district court's action constitutes an abuse of discretion if (1) no reasonable person would take the view adopted by the district court; (2) it is based on an error of law; or (3) it is based on an error of fact. *Wiles v. American Family Life Assurance Co.*, 302 Kan. 66, 74, 350 P.3d 1071 (2015).

Here, Oliver's statement that he might have an interest in the lease was introduced as evidence to establish that Deutsch had *notice* of Oliver's potential interest in the lease and was not introduced to prove that Oliver *actually had an interest* in the mineral lease. Because it was not introduced to prove the truth of the matter asserted, the statement did not qualify as hearsay.

2. *Robro and Bitter End's direct appeal*

On appeal, Robro and Bitter End assert that (a) the district court erred in allowing Deutsch to proceed on his third-party claim, (b) the district court erred in entering judgment against them based on unjust enrichment, and (c) the district court's damage award was not supported by substantial competent evidence.

a. *Third-party claim*

Robro and Bitter End argue that the district court erred in allowing Deutsch to proceed on a third-party claim. First, Robro and Bitter End suggest Deutsch lacked standing to bring a claim against them. Even if Deutsch had standing, Robro and Bitter

End allege the district court erred in denying their motion to dismiss Deutsch's petition for failure to state a claim for relief.

(1) *Standing*

The Kansas Constitution imposes a case-or-controversy requirement, part of which is a component of a court's subject matter jurisdiction, or standing. *Sierra Club v. Moser*, 298 Kan. 22, 29, 310 P.3d 360 (2013); *State ex rel. Morrison v. Sebelius*, 285 Kan. 875, 895-96, 179 P.3d 366 (2008). Standing is "'a party's right to make a legal claim or seek judicial enforcement of a duty or a right.'" *KNEA v. State*, 305 Kan. 739, 746, 387 P.3d 795 (2017). To have standing, a party "must demonstrate that he or she suffered a cognizable injury and that there is a causal connection between the injury and the challenged conduct." *Board of Sumner County Comm'rs v. Bremby*, 286 Kan. 745, 761, 189 P.3d 494 (2008). "[I]f a person does not have standing to challenge an action or to request a particular type of relief, then 'there is no justiciable case or controversy' and the suit must be dismissed." 286 Kan. at 750. Because standing is a jurisdictional question, it may be raised by the parties or by the court at any time and is one over which we exercise unlimited review. See *FV-I, Inc. v. Kallevig*, 306 Kan. 204, 211, 392 P.3d 1248 (2017).

We easily can resolve the question of standing. Deutsch can claim injury based on the fact that the Trust filed a breach of contract action against him seeking the recovery of its royalty payments. Deutsch is being sued by the Trust for royalty payments he never received that allegedly were paid to Robro and Bitter End. The Trust's lawsuit constitutes a cognizable injury. Robro and Bitter End refused to return the royalty payments to which they were never entitled. This refusal is the challenged conduct. Because there is a causal connection between Deutsch's injury (lawsuit seeking recovery of royalty payments) and the challenged conduct (Robro and Bitter End's refusal to return the royalty payments), Deutsch had standing to file a third-party claim impleading Robro and Bitter End.

(2) *Motion to dismiss*

When reviewing a motion to dismiss based on the pleadings, this court considers the well-pleaded facts in a light most favorable to the plaintiff and assumes as true those facts and any inferences reasonably drawn from them. When the well-pleaded facts state any claim upon which relief can be granted, dismissal is improper. *Cohen v. Battaglia*, 296 Kan. 542, 546, 293 P.3d 752 (2013). This court has the duty of determining whether the facts and inferences support a claim "'not only on the theory which may be espoused by the plaintiffs, but on *any possible theory* we can divine.'" *312 Education Ass'n v. U.S.D. No. 312*, 273 Kan. 875, 882, 47 P.3d 383 (2002). We will not resolve any factual disputes when deciding a motion to dismiss for failure to state a claim. Dismissal of a lawsuit is proper only when the allegations in the petition clearly demonstrate the plaintiff does not have a claim. See *Steckline Communications, Inc. v. Journal Broadcast Group of KS, Inc.*, 305 Kan. 761, Syl. ¶ 2, 388 P.3d 84 (2017).

Deutsch's petition alleged, in relevant part:

"8. Deutsch drilled and completed an oil well known as the '[Morrison B]' as a producer of oil in January 2013 on the acreage described in paragraph 6, above. [Marilyn] alleges Deutsch caused the crude purchasing company, [Sunoco] to incorrectly pay a portion of the 1/8th royalty from the [Morrison B] well to [Robro and Bitter End] for the time period from January 2013 to March 2014, for which [Marilyn] seeks judgment against Deutsch.

"9. As a result of the allegedly mistaken payments, [Robro] received $25,073.02, and [Bitter End] received $113,111.35, of the royalty income which [Marilyn] alleges should have been paid to the Trustee of the Batman Revocable Trust No. 1. As a part of the Sunoco Division Orders signed by [Robro and Bitter End], they agreed to indemnify the crude purchasing company for any payments made to them to which they were not entitled.

"10. The Trustee of the Batman Revocable Trust No. 1 has made a claim against Deutsch based on the promises contained in the above oil and gas lease for the royalty

13

income paid incorrectly to [Robro and Bitter End] and alleging Deutsch is indebted to the Trustee in the full amount of all royalty income paid to [Robro and Bitter End].

"11. If the allegations made by [Marilyn] against Deutsch are valid and this Court holds that the royalty from the [Morrison B] well is the rightful property of the Batman Revocable Trust, then by implication, [Robro and Bitter End] have been unjustly enriched by Deutsch."

The elements of an unjust enrichment claim are: (1) the plaintiff conferred a benefit on the defendant; (2) the defendant appreciated or acknowledged the benefit; and (3) under the circumstances, it would be inequitable to allow the defendant to retain the benefit without paying for its value. *Haz-Mat Response, Inc. v. Certified Waste Services Ltd.*, 259 Kan. 166, 177, 910 P.2d 839 (1996). A constructive trust is a remedy that arises where "'a person holding title to property is subject to an equitable duty to convey it to another on the ground that he [or she] would be unjustly enriched if he [or she] were permitted to retain it.'" *Estate of Draper v. Bank of America*, 288 Kan. 510, 518, 205 P.3d 698 (2009).

Considering the well-pleaded facts in a light most favorable to the plaintiff and assuming as true those facts and any inferences reasonably drawn from them, we find the facts and inferences alleged by Deutsch support a valid claim of unjust enrichment against Robro and Bitter End. The district court did not err in denying the motion to dismiss.

b. *Unjust enrichment*

The district court entered judgment against Robro and Bitter End on grounds of unjust enrichment and imposed a constructive trust as a remedy: "[Robro and Bitter End] admitted that they received royalty payments from the Morrison B well that they were not entitled to, because they should have been paid to Plaintiff, Batman Trust, and that it

14

would be unfair for them to keep the payments." In addition, the court held that Robro and Bitter End had waived any defense to a claim of unjust enrichment.

Robro and Bitter End challenge the district court's ruling on several grounds. Specifically, Robro and Bitter End assert (1) the court's judgment was improperly based on an impleader cause of action that actually constituted an inauthentic pass-through claim, (2) the court's judgment was improperly founded on the tort of conversion, (3) the judgment based on unjust enrichment was improper because the Trust had an adequate remedy at law against Deutsch, (4) the court's judgment was precluded by the voluntary payment rule, (5) the court's finding that they admitted to being unjustly enriched was not supported by substantial competent evidence, (6) they did not waive a bona fide purchaser defense, and (7) the payments they received from Sunoco are not fairly traceable to the Trust's share of the commingled production.

The district court is given wide discretion in deciding on the appropriate equitable remedy, and the court's decision is subject to reversal only when no reasonable person would agree with it. See *Cousatte v. Lucas*, 35 Kan. App. 2d 858, 867-68, 136 P.3d 484 (2006).

### (1) *Impleader*

Robro and Bitter End assert Deutsch's impleader action constituted an "inauthentic pass-through claim." Robro and Bitter End argue that because they had no contractual relationship with Deutsch, and therefore no derivative liability for the Trust's claim against Deutsch, his impleader action constituted an "inauthentic pass-through claim."

The Kansas Rules of Civil Procedure recognize third-party claims. K.S.A. 2017 Supp. 60-214(a)(1) provides that "[a] defending party may, as a third-party plaintiff,

serve a summons and petition on a nonparty who is or may be liable to it for all or part of the claim against it." The Kansas Supreme Court has stated that

> "the language addressing third-party actions under K.S.A. 60-214(a) pertains to procedure only and does not create any substantive rights. The statute relates generally to the subjects of reimbursement, indemnity, or contribution, but it creates no substantive right to the same. There must be some substantive basis for the third-party claim before one can utilize the procedure of K.S.A. 60-214(a). Third-party practice is simply a permissive procedural device whereby a party to an action may bring in an additional party and bring a claim against such party, because of a claim that is being asserted against the original party. It has been said that the general purpose of the practice is to avoid circuity of action and to dispose of the entire subject matter arising from one set of facts in one action, thus administering complete and evenhanded justice expeditiously and economically." *Kansas Bd. of Regents v. Skinner*, 267 Kan. 808, 812-13, 987 P.2d 1096 (1999).

Here, Deutsch did not make a direct claim for indemnity against Robro and Bitter End; rather, Deutsch brought a claim of unjust enrichment based on any liability he might have to the Trust. Because the Trust's claims against Deutsch and Deutsch's unjust enrichment claim against Robro and Bitter End arose from the same set of facts, combining the two sets of claims into one lawsuit was proper. As a result, Deutsch's claim against Robro and Bitter End constituted a valid impleader action.

      (2) *Conversion*

Preliminarily, Robro and Bitter End note that the district court relied on equity to enter judgment against them. Nevertheless, they argue that the court's judgment was erroneous to the extent that it was founded on the tort of conversion. But the district court did not find Robro and Bitter End liable for conversion. The court stated that although a conversion claim may be had against a person or entity that mistakenly received royalty payments, "because of the admission of [Robro and Bitter End,] this Court, sitting in

equity, can find for [the Trust] without applying the specific elements of conversion." Therefore, we need not address this issue.

### (3) *Adequate remedy at law*

Robro and Bitter End argue that the district court's judgment was erroneous because unjust enrichment and the remedy of constructive trust are equitable in nature and are not available if there is an adequate remedy at law. Robro and Bitter End contend that because the Trust had an adequate remedy at law—a breach of contract claim against Deutsch—the equitable judgment against them was improper.

Kansas courts generally do not allow equitable remedies when there is an adequate remedy at law. Under this principle, a claim must first be made against the one who violated a duty, and a remedy at law must be unavailable before equitable relief is allowed. *Nelson v. Nelson*, 288 Kan. 570, 597, 205 P.3d 715 (2009).

Robro and Bitter End's argument is misplaced. Whether the Trust had an adequate remedy at law against Deutsch is irrelevant under the circumstances of this case because Deutsch also brought an unjust enrichment claim against Robro and Bitter End. The district court found Deutsch liable for the Trust's damages, but Deutsch did not receive any of the royalty payments at issue. Deutsch asserted that Robro and Bitter End improperly received the royalty payments. It cannot be said that Deutsch had an adequate remedy at law because his only contractual relationship was with Sunoco, which is not a party to this case. Deutsch had no contractual relationship with Robro and Bitter End. As a result, the district court did not err in granting both legal relief to the Trust and equitable relief to Deutsch.

(4) *Voluntary payment*

Robro and Bitter End next argue that Deutsch is not entitled to recovery of the royalty payments because he voluntarily directed payment of the Morrison B royalties to them.

> "'Where as a result of good faith mistake royalty has been paid to a person not entitled to receive same or where excessive payments have been made in good faith, it is generally held that the lessee (or purchaser) who has made such payments may recover from the payee the payments to which he [or she] was not entitled. However a voluntary overpayment not caused by mistake may not be recovered.'" *Waechter v. Amoco Production Co.*, 217 Kan. 489, 515, 537 P.2d 228 (1975) (quoting 3 Williams, Oil and Gas Law § 657, p. 712).

Although Robro and Bitter End incidentally raised this argument in their answer to Deutsch's petition, there is no indication in the record that they presented any substantive argument on this issue to the district court. Generally, an appellate court will not consider an argument for the first time on appeal. *Wolfe Electric, Inc. v. Duckworth*, 293 Kan. 375, 403, 266 P.3d 516 (2011). Although there are several exceptions to this general rule, Robro and Bitter End do not acknowledge their failure to substantively address this issue below or otherwise argue that any of these exceptions apply to justify our consideration of the issue. See *In re Estate of Broderick*, 286 Kan. 1071, 1082, 191 P.3d 284 (2008).

In any event, the voluntary payment rule is inapplicable under the facts present here. The voluntary payment rule applies in cases involving "'a person who has full knowledge of the facts.'" *Waechter*, 217 Kan. at 515 (quoting 3 Kuntz, Oil and Gas [A Revision of Thornton] § 42.8, p. 405). Any suggestion that Duetsch directed payment of the royalties at issue to Robro and Bitter End with an awareness that they belonged to the Trust is not supported by the record. This argument necessarily fails.

18

(5) *Admission of unjust enrichment*

Robro and Bitter End next take issue with the district court's finding that they admitted to receiving royalty payments to which they were not entitled and which would be unfair for them to keep. Robro and Bitter End claim that this finding is not supported by substantial competent evidence.

The district court's finding that Robro and Bitter End admitted to being unjustly enriched appears to be based on the trial testimony of Kelly Lowry, a land supervisor for Robro and Bitter End. As a land supervisor, Lowry reviewed title, executed division orders, and managed oil and gas assets. Upon questioning by Deutsch's counsel, Lowry testified, in relevant part:

"Q:    And sitting here today, you have to admit that Robro, Bitter End received royalty
payments from a well that they didn't have a royalty interest in. True?
"A:    Well, that's—Mr. Deutsch said that there was a second—there was a second well.
We know that, and that the wells went to—the production went to a common tank
battery, yes.
"Q:    And that resulted in you getting the royalty payments, right?
"A:    Yes.
"Q:    Which you weren't entitled to, right?
"A:    Yes.
"Q:    It wouldn't be fair for you to keep those, would it?
"A:    Of course not. It's not right to keep something that's not yours.
"Q:    But you haven't given it back yet. True?
"A:    We haven't been shown—proven what that commingled amount is."

Robro and Bitter End assert that the district court's reliance on this testimony is misplaced and taken out of context. Robro and Bitter End rely on the part of Lowry's testimony stating that Deutsch had provided no objective basis for the amount allegedly overpaid, that her information indicated that Sunoco's payments were properly disbursed,

19

and that Sunoco's absence in the case exposed Robro and Bitter End to the risk of double liability. Robro and Bitter End suggest that Lowry's testimony simply admitted that they were willing to consider resettling the payments with Sunoco upon satisfactory proof.

Contrary to Robro and Bitter End's assertions, testimony relating to Lowry's concerns about the amount of royalty overpayment or the risk of double liability does not negate her testimony establishing the elements of unjust enrichment. As earlier stated, these elements are: (1) the plaintiff conferred a benefit on the defendant; (2) the defendant appreciated or acknowledged the benefit; and (3) under the circumstances, it would be inequitable to allow the defendant to retain the benefit without paying for its value. *Haz-Mat Response, Inc.*, 259 Kan. at 177. In addition to the testimony outlined above, Lowry also testified to the following upon questioning by the Trust's counsel:

> "Q: So earlier when you said at first we weren't comfortable that we really knew the facts, as you sit here today, don't you admit that the oil that was produced by the Morrison B well should have been paid to my client's credit and not to Robro's? You admit that, don't you?
> "A: The oil produced from the Morrison B should have been paid to the Batmans, yes.
> "Q: Okay, and if it was mistakenly paid to you, I'm not talking about whose fault it is. I'm not suggesting it's your fault. I'm certainly not suggesting it's my client's fault, but I don't care whose fault it is. If it was paid to you, wouldn't you agree that you have an obligation to pay it back to the people who rightfully are entitled to that?
> "A: Well, we don't have those—those funds. Those—they were paid—if funds were paid to us, they have been distributed out to limited.
> . . . .
> "Q: Okay. Let me circle back around. I mean, even though you may have already spent the money you got, wouldn't you agree that, in fairness, in equity, our clients should get that money because it wasn't your money to start with, whatever that amount is? You would agree with that, wouldn't you?
> "A: Yes, whatever for that well, yes."

20

Lowry's testimony established that (1) Robro and Bitter End received royalty payments belonging to the Trust, (2) Robro and Bitter End understood the royalty payments belonged to the Trust, and (3) it would be inequitable for Robro and Bitter End to retain the royalty payments. As a result, the district court's finding that Robro and Bitter End admitted they had been unjustly enriched is supported by substantial competent evidence.

(6) *Bona fide purchaser defense*

Robro and Bitter End argue that the district court could not impose a constructive trust against them because they were bona fide purchasers of the royalty payments at issue. Robro and Bitter End also challenge the district court's finding that they waived a bona fide purchaser defense.

A bona fide purchaser is one who receives property in good faith for value. The law protects bona fide purchasers; a court cannot impose a constructive trust when a bona fide purchaser has purchased the property to be held in constructive trust. See Restatement (First) of Restitution § 172 (1937).

Notably, Robro and Bitter End only incidentally raised this argument below in their answer to Deutsch's petition. But there is no indication in the record that they made any substantive argument on this issue before the district court. As a result, there is substantial competent evidence to support the district court's finding that Robro and Bitter End waived a bona fide purchaser defense.

But even if Robro and Bitter End did not waive this argument below, they still are not entitled to relief on this basis because they did not give value for the right to receive royalties from the Morrison B well. Rather, Robro and Bitter End gave value only for the

21

right to receive royalties from the Morrison A well. Robro and Bitter End do not have a valid bona fide purchaser defense.

(7) *Payments traceable to Trust's share of commingled production*

Robro and Bitter End argue that the court could not impose a constructive trust against them because the royalty payments they received from Sunoco are not clearly traceable to the Trust's share of the commingled oil production. Specifically, Robro and Bitter End claim that the quantity of production attributable to the Morrison B well lost any means of identification when mixed with production from the Morrison A well because the production flows from the two wells were not segregated, metered, or tested.

"[A] constructive trust is essentially a tracing remedy, allowing recovery of the specific asset or assets taken from the plaintiff." *Nelson*, 288 Kan. at 580; see *Woods v. Duval*, 151 Kan. 472, 480, 99 P.2d 804 (1940) (declining to impose constructive trust where plaintiff could not show that oil royalties paid to testator could be clearly traced into hands of her beneficiary).

Here, there is evidence that a reasonable person could accept as adequate to support the conclusion that the royalty payments Robro and Bitter End received could be traced to the production from the Morrison B well. Deutsch testified and presented evidence that from 2008 to 2012, the average production of the Morrison A well was two barrels of oil a day. Deutsch also testified and presented evidence that the production attributed to the Morrison A well increased significantly starting in January 2013, when the Morrison B well began producing. Lowry, who worked for Robro and Bitter End, agreed that production out of the Morrison A well was small and she had no information that it ever produced more than two barrels of oil per day. Lowry also testified that in the five years prior to 2013, oil production from the Morrison A well had never reached 1,000 barrels per year. Lowry stated that production increased to 14,306 barrels in 2013.

The royalty payments at issue received by Robro and Bitter End are traceable to production from the Morrison B well.

c. *Damages*

Finally, Robro and Bitter End challenge the basis for the district court's damage award. Specifically, they claim that the court improperly relied on a "pre-suit liquidation agreement" between the Trust and Deutsch because there was no basis in the record to support a finding that this was the actual amount of the Trust's damages.

Prior to trial, the Trust and Deutsch stipulated that the Trust should have received royalties in the amount of $157,099.10 from the Morrison B well. At trial, Deutsch testified that he came up with this amount by determining that the average production for the Morrison A well in 2012 was two barrels of oil per day. Deutsch then looked at the production after the Morrison B well began producing and subtracted two barrels a day as credit for the Morrison A well, leaving the remaining production to be credited to the Morrison B well. Deutsch testified that he had a spreadsheet prepared which used production reports and purchasing statements to determine the allocation of the amounts owed for the Morrison B production. Karri Knox-Wolken, who did accounting work for Deutsch, testified that she prepared the spreadsheet at Deutsch's request by reviewing the production data and purchasing statements relating to both the Morrison A and B wells to calculate the production attributable to each. Knox-Wolken testified that the method used was consistent with generally accepted accounting principles. The district court admitted the spreadsheet into evidence. The spreadsheet provided that Robro had been overpaid by $25,073.02; that Bitter End had been overpaid by $113,111.35; and that Vendetta had been overpaid by $18,914.73. This amount totaled $157,099.10 and represented the amount owed to the Trust.

23

Robro and Bitter End challenge Deutsch's calculations as conclusory on grounds that the wells were not properly located within the surface boundaries of the Trust's lease; Deutsch failed to produce production data, gauge reports, or well maintenance data supporting his calculations; Deutsch used improper data points to construct separate daily production rates from the Morrison A and B wells; and Deutsch and Knox-Wolken were not qualified to testify on this subject matter.

Robro and Bitter End raised these issues during cross-examination of both Deutsch and Knox-Wolken. Their arguments on appeal are no more than an invitation to reweigh the evidence, which we cannot do. "It is not our function to weigh conflicting evidence, pass on the credibility of witnesses or redetermine questions of fact and our only concern is with evidence which supports the trial court's findings and not with evidence which might have supported contrary findings." *Care Display, Inc. v. Didde-Glaser, Inc.*, 225 Kan. 232, 237, 589 P.2d 599 (1979).

Evidence of damages need not be precise; all that is required is some reasonable basis for computing the damage award. See *Martinez v. Milburn Enterprises, Inc.*, 290 Kan. 572, 611, 233 P.3d 205 (2010). A reasonable person could have accepted the evidence outlined above as sufficient to represent the Trust's amount of damages and to provide an adequate legal basis for the district court's judgment.

3. *The Trust's cross-appeal*

The Trust challenges the district court's judgment on grounds that it is entitled to prejudgment interest on the damages awarded under K.S.A. 16-201.

The Trust's petition included a claim for prejudgment interest, but the district court's award did not include prejudgment interest. Following the district court's entry of judgment, the Trust filed a notice of cross-appeal with the district court. But the Trust did

not timely docket its appeal with this court, and we denied the Trust's motion to docket out of time.

Because the Trust did not comply with the procedural requirements to be a cross-appellant, its challenge to the district court's failure to enter an award of prejudgment interest is not properly before this court. See Kansas Supreme Court Rules 2.04(a)(2) and 2.041(a) (2018 Kan. S. Ct. R. 15, 17).

Affirmed.